**GAMMONS et al. v. HASSETT, Collector.**
**No. 3673.**

Circuit Court of Appeals, First Circuit.
June 27, 1941.

230

Harold Williams, of Boston, Mass., for appellants.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., and Edmund J. Brandon and George F. Garrity, both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This action was brought in the District Court by the executors and trustees under the will of Bryan R. Houghton to recover $29,927.72, a part of the estate tax paid under protest and alleged to have been assessed illegally by the Commissioner of Internal Revenue. It is claimed that a deduction of $170,779.04 from the gross estate of the decedent should have been allowed on account of certain bequests to charities. The District Court sustained the action of the Commissioner in refusing to allow the deduction. The plaintiffs have appealed.

The following facts were either stipulated by the parties or found by the District Judge:

Bryan R. Houghton died June 30, 1936, at the age of 92, leaving a widow, Mary F. Houghton, aged 93. There were no children of the marriage, and Mr. Houghton had no near relatives. Mrs. Houghton had been bedridden for more than two years before her husband's death, and during this period he handled all her business affairs, though she was able to sign checks. Mrs. Houghton was and is mentally alert, but she is still confined to her bed. After her husband's death it was necessary to appoint a conservator for her because of her physical condition.

The decedent's will, dated October 24, 1934, was reaffirmed by a codicil, dated May 29, 1936. Article III of the will is in part as follows:

"1. All the rest, residue and remainder of my property, of whatever nature, and wherever situated, including all property over which I now have, or may hereafter acquire, the power of disposition, I give, devise and bequeath to my Trustees, in trust, nevertheless, for the following purposes: to be held by them, the income thereof, after paying all reasonable expenses of the trust, including a reasonable compensation for the services of my Trustees, and so much of the principal thereof as my said wife may at any time and from time to time need or desire, to be paid to my said wife during her life.

\* \* \* \* \* \*

"3. I direct my said Trustees to transfer, make over and distribute the rest, residue and remainder of my estate to the New England Grenfell Association, of 25 Huntington Avenue, Boston, Massachusetts, and the Society for Prevention of Cruelty to Animals, of Boston, Massachusetts, share and share alike, free and discharged of any trust."

It is stipulated that the New England Grenfell Association and the Society for the Prevention of Cruelty to Animals, of

Boston, are charitable corporations within the Revenue Act of 1926, as amended.

When Mr. Houghton reaffirmed the will by the codicil of May 29, 1936, he did not expect that his wife would live long. On the same day that this codicil was executed, Mrs. Houghton executed a codicil to her will under which the residue of her estate, if her husband predeceased her, was to go to the same trustees and for the same purposes as those stated in the testator's will.

At the time of Mr. Houghton's death, his property had a valuation of approximately $275,000 and Mrs. Houghton's property had a valuation of approximately $190,000. Over a period of years their combined income had varied between $15,000 and $25,000 a year. They had always lived on a very simple scale and their combined income was in excess of that required to maintain their customary standard of living.

The plaintiffs maintain that the Commissioner should have allowed a deduction of $170,779.04 from the gross estate of the decedent on account of the bequests to the charities under Section 303(a)(3) of the Revenue Act of 1926,[1] 44 Stat. 9, 72, 26 U.S.C.A. Internal Revenue Acts, page 232.

They filed a claim for refund which the Commissioner denied on the ground that "the right given the life tenant to invade the corpus as she may at any time and from time to time need and [sic] desire, is too broad". He stated that he saw no reason "why, under the power so granted without any limitation, the fund may not become exhausted or so affected as to render unascertainable as of the date of death, the amount which might pass to the charities."

The only question presented is whether the bequests to the charities were sufficiently definite and ascertainable as of the date of the death of the testator to be deductible from the gross estate.

■ The rule is now well established that a deduction for a charitable gift will be allowed only if the value of the charitable gift can be ascertained definitely at the date of the testator's death. Humes v. United States, 1928, 276 U.S. 487, 48 S.Ct.

347, 72 L.Ed. 667; Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; United States v. Provident Trust Co., 1934, 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793. We believe that the value of the charitable remainders could not be determined at that time and, consequently, no deduction can be allowed.

The plaintiffs contend that the value of the charitable remainders was ascertainable at the testator's death and a deduction should have been allowed under the principle of Ithaca Trust Co. v. United States, supra. In support of this contention they argue that construed in the light of all the circumstances in which the will was executed, the word "desire" meant a desire on the life tenant's part for use of the principal during her lifetime in order to maintain her existing standard of living; and that even if this interpretation of the word "desire" is rejected, under Massachusetts law the life tenant will not be permitted to destroy the charitable remainder by invasion of the principal at her mere whim, and any invasion of the principal in the special circumstances of this case would constitute a mere whim on Mrs. Houghton's part. They also maintain that even if it is held that an invasion of the principal by Mrs. Houghton is permissible under Massachusetts law, the likelihood that she would use the power of invasion of the principal was so remote at the testator's death that the value of the charitable remainders was ascertainable at that time. We cannot accept any of these contentions.

■ The will must be interpreted under Massachusetts law. "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Commissioner, 1940, 309 U.S. 78, 80, 60 S.Ct. 424, 426, 84 L.Ed. 585. Under Massachusetts law the extent of the beneficiaries' interests is determined by the intention of the testator, and that intention is to be ascertained by a reading of the will in the light of the circumstances under which it was executed. Mills v. Blakelin, 307 Mass. 542, 30 N.E.2d 873, January 2, 1941; Boston Safe Deposit & Trust Co. v. Park, 1940,

---

[1] "Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

\*          \*          \*          \*          \*

"(3) The amount of all bequests, legacies, devises, or transfers \* \* \* to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes \* \* \*."

307 Mass. 255, 29 N.E.2d 977; Boston Safe Deposit & Trust Co. v. Doolan, 1940, 307 Mass. 233, 29 N.E.2d 844; Atkinson, Law of Wills, 755, 756 (1937); Newhall, Settlement of Estates and Fiduciary Law in Massachusetts, sec. 312, at 745 (1937), 3d Ed. Interpreting the will under these rules, we do not believe that the use of the word "desire" by the testator was intended to give the life tenant only a power to use the principal to maintain her existing standard of living. If this were all that the testator intended to accomplish by the use of this word, then it was unnecessary, for that objective had already been accomplished by the word "need". Moreover, in view of the fact that it was apparent to the testator that Mrs. Houghton's income from her own property and the property bequeathed in trust was in excess of that required to maintain her existing standard of living, the word "desire" was unnecessary if all the testator intended to give his widow was a power to use the property to maintain her customary mode of life. We cannot say that the word "desire" is a mere superfluity. When the testator gave his wife the power to invade the principal as she "may * * * desire," he meant what he said. He intended to give her a broad power of invasion of the principal, not restricted to a mere use of the corpus for the purpose of satisfying her needs.

It follows that the District Judge was not in error in refusing to grant plaintiffs' seventh request for a finding of fact "that by the word 'desire' Mr. Houghton meant a desire on Mrs. Houghton's part for use of the principal during her lifetime in order to maintain her existing standard of living."

■ The Massachusetts case closest to the present case is Merchants' Trust Co. v. Russell, 1927, 260 Mass. 162, 157 N.E. 338, 339. There the life tenant was given "full power and authority to use the income and principal as he desires". He was given a power to sell the property, but he was not given a power to dispose of the property by will. The life tenant made a gift of the property to his son and in a proceeding brought by creditors of the life tenant, it was held that the gift was in excess of the life tenant's power. The court said: "He had no power to make a gift of the property, or convey it without consideration. He could sell it and dispose of the proceeds as he desired, but the language of the power must be so construed as to carry out the testator's intentions and regard must be had to the rights of the remaindermen". It would seem that the court held that the life tenant could make a gift of the proceeds of the property but not of the property itself. Such a holding imposes an extraordinary refinement on the character of the life tenant's power. Should the law of Massachusetts be that Mrs. Houghton under the power given in the present case could not make a gift of the residue, nevertheless she would be free to invade the principal for other purposes, and this power would make the value of the charitable remainder uncertain at the time of Mr. Houghton's death.

■ It is unnecessary for us to decide what the law of Massachusetts is with respect to the invasion of the principal at one's mere whim, for we think that the Massachusetts courts would not hold an invasion of the principal in the exercise of reasonable desires an excessive use of the power. Acceptance of the argument that any invasion of the principal would constitute a mere whim on her part would render the grant of the power to her meaningless, and the testator would be giving his wife a power to invade the principal which she could not use. We cannot ascribe such an intention to the testator.

The plaintiffs contend that the District Judge was in error in refusing to construe the will in the light of all the circumstances of its execution. While there is language in his opinion which might indicate that he did not construe the will according to this established rule, his findings of fact and his whole opinion show that he did construe it in the light of the circumstances of its execution. Nor do we believe that the District Judge held that the life tenant had a power to destroy the charitable remainders at her mere whim or that he based his decision on such a holding. However, in view of our treatment of the case, it becomes unnecessary to pass finally on these points.

■ As to the plaintiffs' last contention, we agree that the likelihood of the use of the power was extremely remote at the time of the testator's death, but this fact does not bring the case within the principle of Ithaca Trust Co. v. United States, supra, and United States v. Provident Trust Co., supra. In both of those cases the value of the charitable gifts was certain with a quality of certainty not present in this case.

In Ithaca Trust Co. v. United States, supra, the testator gave the residue of his estate to his wife for life with authority to use from the principal any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys". After the death of the wife there were bequests in trust for charities. The Supreme Court held that the value of the charitable remainders was ascertainable at the date of the testator's death and, hence, deductible from the gross estate. "The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion." It was certain that the charities would take the property over and above what was required to maintain the life tenant's customary standard of living. That amount of property and its value could be determined definitely. In the present case we have no such certainty. The power to invade the principal is not restricted to the life tenant's needs; the widow may invade it as she desires. We know of no standard fixed in fact by which we could measure either the extent of the life tenant's desires or the likelihood of an exercise of those desires, so that we could place a definite value on the charitable bequests. While we grant that the likelihood of invasion of the principal was extremely remote at the testator's death, still the possibility of invasion did exist and, therefore, the amount of the property which would go to charity was uncertain.

In United States v. Provident Trust Co., supra, the testator devised the remainder of the estate in trust to pay the income to deceased's daughter during her life, and upon her death to her lawful issue; and further provided that upon the death of the daughter without issue, the testator's residuary estate should be distributed among designated charitable institutions and societies. It was established that at the time of the testator's death the life tenant was incapable of bearing children as a result of an operation. The Supreme Court held that the value of the charitable remainders was ascertainable at the testator's death and, hence, deductible from the gross estate. In that case, it was certain that the charities would take the property over and above the life estate; the value of the remainder after the life estate could be definitely determined. There is no such certainty in the present case, for what the charities will take depends upon the possibility of the exercise of the power to invade the principal as the life tenant may desire.

The test of deductibility was laid down in United States v. Provident Trust Co., supra, 291 U.S. at page 286, 54 S.Ct. at page 392, 78 L.Ed. 793, in these words:

"The sole question to be considered is, What is the value of the interest to be saved from the tax? That is a practical question, * * * to be determined by ascertaining in terms of money what the property constituting that interest would bring in the market, subject to such uncertainty as ordinarily attaches to such an inquiry."

In Humes v. United States, supra, 276 U.S. at page 494, 48 S.Ct. at page 348, 72 L.Ed. 667, Mr. Justice Brandeis said:

"One may guess, or gamble on, or even insure against, any future event. * * * But the fundamental question in the case at bar is not whether this contingent interest can be insured against or its value guessed at, but what construction shall be given to a statute. Did Congress, in providing for the determination of the net estate taxable, intend that a deduction should be made for a contingency the actual value of which cannot be determined from any known data? Neither taxpayer, nor revenue officer—even if equipped with all the aid which the actuarial art can supply—could do more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character."

The present case falls within the principle of the Humes case. Granted that the likelihood of the use of the power to invade the principal as the life tenant may desire is remote, one could do no more than guess at the value of the charitable bequests so long as they remained subject to the possibility of an exercise of the power.

In Knoernschild v. Commissioner, 7 Cir., 1938, 97 F.2d 213, the testator left property to his daughter in trust, with the property to go to charity on the daughter's death. It was provided that the daughter could invade the principal for the purpose of providing financial assistance for her mother or any of her brothers or sisters. The court refused to allow a deduction on account of the charitable bequest. In the present case an even broader power was granted the life tenant. While the proba-

bility of the use of the power was more remote in the case at bar than in this case, nevertheless it was not so remote as to make the value of the charitable bequest ascertainable at Mr. Houghton's death.

If we were to extend the principle of Ithaca Trust Co. v. United States, supra, to cover this case, then the taxing authorities would be involved in litigation with respect to the likelihood of the use of the power in every case in which there was a gift to charity, subject to a power of appointment away from the charity or a power to invade the principal other than for mere needs.

Since the value of the charitable bequests was not definite and ascertainable at the time of the testator's death, we hold that there was no basis for a charitable deduction.

The judgment of the District Court is affirmed.

MAGRUDER, Circuit Judge (concurring).

In my opinion the case at bar could be decided in favor of the taxpayer on a perfectly logical application—or perhaps extension—of the principle laid down in Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647.

In that case, the testator did not provide an indefeasible remainder to charity upon the death of the life tenant; there was a possibility that the corpus might be invaded for the use of the life tenant to the extent that the income of the estate should prove insufficient to maintain the life tenant in her existing scale of living. It appeared that at the time of the testator's death this income "was more than sufficient to maintain the widow as required". At the death of the testator the life tenant was then 61 years of age, and if she had lived 15 or 20 years more a shrinkage in the yield during that period might have necessitated an invasion of the principal. As a matter of fact she died within a few months, even before the time for computing and returning the estate tax. But the court held that the value of the gift over to charity must be determined as of the date of the testator's death, and that this is calculated by deducting from the value of the corpus ultimately going to charity the value of the wife's life estate estimated by the mortality tables. This method of computation leaves out of account the contingency that the principal might be invaded for the use of the life tenant, a contingency which a

prospective purchaser of the charitable corporation's future interest would hardly ignore. Cf. United States v. Provident Trust Co., 291 U.S. 272, 286, 54 S.Ct. 389, 78 L. Ed. 793. Apparently the Supreme Court considered that the contingency should be left out of account because as a practical matter the chances of its happening were negligible. It said (279 U.S. at page 154, 49 S.Ct. at page 291, 73 L.Ed. 647) : "There was no uncertainty appreciably greater than the general uncertainty that attends human affairs." Whether the contingency is negligible might depend upon a variety of factors, e. g., the margin of safety by which the present income exceeds the widow's maintenance needs, the age and state of health of the widow, the nature of the trust property out of which the income is to be raised, the honesty and competence of the trustees. It may well be argued that the calculation of the estate tax ought not to depend upon a weighing of such variable factors.

In the case before us there is also a contingency provided in the will under which the principal may be invaded for the use of the life tenant. Theoretically the contingency is broader and the chance of its occurrence less capable of estimation than in the Ithaca Trust case, because it depends upon the life tenant's desires as well as her needs. But practically speaking, upon the facts in the present record as compared with the facts in the Ithaca Trust case, the charitable remaindermen are at least as well assured—perhaps somewhat better assured—of receiving the corpus intact upon the death of the life tenant. Here the life tenant is "an old-fashioned New England lady" who has always lived very simply, who at the death of the testator was 93 years old and bedridden, whose income, as found by the court below, is "greatly in excess" of her needs, who has provided in her will for the same two charities which were the objects of her husband's bounty. She might, conceivably, blossom out with a desire to buy a yacht or a lavish country estate, but this possibility would hardly cause grave concern to the remaindermen.

But though the charities here may be well assured as a practical matter of receiving the whole of the corpus upon the death of the life tenant, I agree with the argument of the Government that "Cases of this type must be governed by the existence of the power rather than the likelihood of its use, as shown by the extrinsic

circumstances, varying, of course, in each particular case". The testator can save estate taxes by giving an indefeasible remainder to charity upon death of the life tenant. But if he chooses to make the gift over contingent upon the non-exercise by the life tenant of such a broad power as here conferred, it does not seem unfair to deny the deduction. The Ithaca Trust case must be considered as going to the very verge of the law, and in the absence of further guidance from the Supreme Court we ought not to extend the doctrine of that case, however logical and appealing the extension might be under the particular facts. See Pennsylvania Co. for Insurances, etc. v. Brown, D.C., 6 F.Supp. 582, affirmed per curiam, 3 Cir., 70 F.2d 269.