COMMISSIONER OF INTERNAL REVENUE v. MERCHANTS NAT. BANK OF BOSTON.

No. 3787.

Circuit Court of Appeals, First Circuit.

Dec. 30, 1942.

Newton K. Fox, Sp. Asst. to Atty. Gen., (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and J. P. Wenchel, Gen. Counsel, B. of I. R., and Ralph F. Staubly, Sp. Atty., B. of I. R., all of Washington, D. C., of counsel), for the Commissioner.

Edward C. Thayer, of Boston, Mass., for taxpayer.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

In this case the Board of Tax Appeals reversed the determination by the Commissioner of Internal Revenue of deficiencies of $42,825.69 in income tax for 1937, and $26,290.93 in respondent's estate tax. The Commissioner has filed this petition for review.

The facts in this case are not in dispute and may be stated briefly as follows: Ozro M. Field, testator, died in 1936 leaving a gross estate of $366,527.66, which included property in the amount of $52,718.75 held jointly by him and his wife, who survived him. She was sixty-seven years of age at the date of his death. Immediately after the death of her husband the widow owned income producing property worth about $104,000 as well as tangible personal property and a country home in Buckland, Massachusetts. They had no children but during a previous marriage Mr. Field had adopted two girls and a boy. In 1936, the girls were married to husbands fully able to support them and the boy was nearly twenty-one years of age. Mr. and Mrs. Field made wills simultaneously leaving the residue of their estates to charity. Under the terms of the residuary trust of the decedent's will, the trustee was to pay the net income to Mrs. Field for her natural life, with the right to pay to or for her benefit "such sum or sums from the principal of the trust fund and at such time or times as my said Trustee shall in its sole discretion deem wise and proper for the comfort, support, maintenance, and/or happiness of my said wife, and it is my wish and will that in the exercise of its discretion with reference to such payments from the principal of the trust fund to my said wife, May L. Field, my said Trustee shall

exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust." Upon her death, all of the corpus of the trust except $100,000 was to go to the charities named in the will. The $100,000 retained under the will was to be held in trust and the income was to be paid in equal portions to the three adopted children and a niece of Mrs. Field's for life. As each beneficiary died, his or her share of income was to be paid to certain charities and upon the death of the last beneficiary the principal of this trust was to be paid over to these charities. The widow's living expenses since the death of her husband have averaged between six and seven thousand dollars a year and during this period she has been able to save excess income of about $40,000.

In 1937 the estate realized capital gains from the sale of certain stocks held in the trust in the amount of $100,900.31, and claimed a deduction in its income tax return on the ground that this amount had been permanently set aside for the charities named in the will. This was disallowed by the Commissioner. He also disallowed a deduction of $128,276.94 in the estate tax return as gifts to charity on the ground that the power of the trustee to invade the corpus of the trust made it impossible to determine the amounts which the charitable legatees would receive.

We are asked to determine whether the bequests to charity are deductible from the gross estate under Section 303 (a) (3) of the Revenue Act of 1926,[1] 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, page 234, and whether the capital gains are deductible from the income of the estate realized in 1937, under Section 162(a) of the Revenue Act of 1936,[2] 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 893, as being permanently set aside for charity. We answer both of these questions in the negative and for the same reasons.

The proposition that a deduction for a charitable gift will be allowed only if the value of the charitable gift can be ascertained definitely at the date of the testator's death is not now open to dispute. United States v. Provident Trust Co., 1934, 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793; Ithaca Trust Company v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Humes v. United States, 1928, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667; Helvering v. Union Trust Co., 4 Cir., 1942, 125 F.2d 401; Gammons v. Hassett, 1 Cir., 1941, 121 F.2d 229. The capital gains realized from the sale of certain securities have become part of the corpus of the trust. The same considerations which determine whether the gift in remainder to charity is definite and ascertainable at the date of the death of the testator are pertinent in a determination whether the capital gains are income permanently set aside in favor of a charity. Commissioner v. Upjohn's Estate, 6 Cir., 1941, 124 F.2d 73; Commissioner v. F. G. Bonfils Trust, 10 Cir., 1940, 115 F.2d 788.

The Board of Tax Appeals stated that this is a borderline case but, nevertheless, concluded that the facts bring it within the rule laid down in the Ithaca Trust case.

---

[1] "Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

"(3) The amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, \* \* \*."

[2] "Sec. 162. Net Income.

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

"(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(o) ) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit; \* \* \*."

The respondent in its brief takes a similar position.

 This court is committed to the view, as laid down in Gammons v. Hassett, supra, that as long as the requirements of the life tenant are unmeasurable and the possibility of invasion of the corpus exists under the language of the trust instrument, then the amounts going to the charitable legatees are uncertain and unascertainable at the death of the testator and cannot be deducted from the gross estate. The decision in the instant case depends upon the proper interpretation of the language used in the testamentary trust, that is, whether or not there is present a possibility of invading the corpus of the trust in the sense that that phrase was used in Gammons v. Hassett, supra. The intention of the testator is to be found in the four corners of the will. His language is to be literally interpreted unless there is some ambiguity as to its meaning. Here the testator clearly stated that he sought to provide for the comfort, support, maintenance and/or happiness of his wife. It is, of course, true that it is difficult to define precisely what happiness means, but happiness is essentially a subjective matter and must be left to an honest determination of the widow. The testator used both the conjunctive and disjunctive showing clearly that he did not want the term "happiness" to be considered as a catch-all. It would be torturing the language used if we were to treat the word happiness as a mere superfluity. If the widow should desire to provide permanently for the adopted children or for near relatives such a desire would be within the term "happiness". There is thus the clear possibility that the corpus of the trust may be invaded.

We recognize, as the respondent urges upon us, that there exist certain distinctions in the case before us and Gammons v. Hassett, supra. In that case the term "desire" was used, which may be said to be somewhat broader than the term "happiness". There, an invasion of the corpus of the trust depended completely upon the will of the widow. Here, there can only be an invasion of the corpus of the trust if in the sole discretion and wisdom of the trustee an invasion of the principal is deemed necessary for the happiness of the widow. But this can mean no more than that the widow must convince the trustee that an invasion of the corpus is necessary to her happiness. The testator, out of abundant caution, in order to prevent any disagreement, admonished the trustee to exercise its discretion with liberality. Assuming then that she is able to convince the trustee that her happiness requires the expenditure of sums of money beyond the income and out of the corpus of the trust, the amount that would ultimately go to charity would be uncertain. Since this possibility exists within the language of the trust instrument, the case is closer to our decision in Gammons v. Hassett, supra, than it is to the Ithaca Trust case. The argument that under the facts in this case there is little likelihood that Mrs. Field will want to invade the corpus of the trust is similar to the argument advanced in Gammons v. Hassett, supra. We refused in that case to consider extrinsic evidence of a most persuasive nature. The widow was ninety-three years old, had been bedridden for years and had ample property of her own for her support. We said: "While we grant that the likelihood of invasion of the principal was extremely remote at the testator's death, still the possibility of invasion did exist and, therefore, the amount of the property which would go to charity was uncertain." (page 233 of 121 F.2d)

The respondent cites First National Bank of Birmingham v. Snead, 5 Cir., 1928, 24 F.2d 186; Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 1929, 36 F.2d 710; Lucas v. Mercantile Trust Co., 8 Cir., 1930, 43 F.2d 39, and Commissioner v. F. G. Bonfils Trust, supra, as supporting its position. These cases are clearly distinguishable. The first three deal with support and maintenance of the widow and clearly fall within the rule laid down in the Ithaca Trust case. The position which we take in the instant case is not at all inconsistent with those holdings. In Commissioner v. F. G. Bonfils Trust, supra, the trustees were directed to collect the income from the trust estate and out of the net income to pay in their absolute discretion for the education of two minor children up to $10,000, and certain specified annuities. In the event that the income should prove insufficient to pay the annuities in full, the balance was to be paid out of the corpus of the trust estate. The will further directed that capital gains should be added to and retained as a part of the corpus of the trust estate and that within ten years after the death of the last survivor of the annuitants the corpus of the trust estate should be paid over to and expended by the foundation

named in the will. The issue in that case was whether a deduction from the gross income of the trust might be taken pursuant to the terms of the will creating the trust as any part of gross income which pursuant to the terms of the will creating the trust is during the taxable year permanently set aside for charitable purposes. The amounts required for the education of the minor children and for the payment of the annuities were certain. The amount of the income that the corpus of the trust would yield was certain within the language of the Ithaca Trust case. It is, of course, true that as a result of changed conditions the amount of income that might result from the corpus of the trust might be diminished but this same argument was presented to the court in the Ithaca Trust case and was rejected as not being one of those uncertainties "appreciably greater than the general uncertainty that attends human affairs". Thus the amounts that would have to be paid out of income were measurable and it was reasonably ascertainable that the income from the corpus of the trust was more than sufficient to pay the annuitants.

In the Ithaca Trust case the court took the view that on the basis of the past history of the widow the sums necessary for her comfort and support were ascertainable at the time of the death of the testator. As the court said (page 154 of 279 U.S., page 291 of 49 S.Ct., 73 L.Ed. 647): "The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money." In the case before us we cannot say with any degree of certainty on the basis of the record what sums will be required for the happiness of the widow. Since we cannot measure the amounts which the widow may require and since there remains the possibility that the corpus of the trust may be invaded, we are constrained to conclude that the amounts which will ultimately go to charity are uncertain and cannot be deducted from the gross estate. What we have said is equally applicable to respondent's contention that the capital gains were permanently set aside for charitable purposes.

The decision of the Board of Tax Appeals is reversed, and the case is remanded to that Board for further proceedings not inconsistent with this opinion.