**COMMISSIONER OF INTERNAL REVE-
NUE v. BANK OF AMERICA NAT.
TRUST & SAVINGS ASS'N.**

No. 10213.

Circuit Court of Appeals, Ninth Circuit.

Feb. 25, 1943.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, Morton K. Rothschild, and Lester L. Gibson, Sp. Assts. to Atty. Gen., for petitioner.

Edward Hale Julien, of San Francisco, Cal., for respondent.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Petition to review a decision of the Board of Tax Appeals. The question is whether testamentary gifts to admitted charities in remainder, after termination of an intervening life estate, are so uncertain as not to be allowable as deductions in computing estate taxes under § 303(a) (3)

of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Acts, page 232.

Elisha Cobb Mayo died August 26, 1937. His will, which had been made earlier in the same year, declared that his only near kin was his sister, Rebecca S. Mayo, and that her welfare was uppermost in his mind. To this sister the testator devised his home with the household goods and personal property contained therein. There were specific bequests to various other persons, totaling $3,500.

By clause Sixth the testator bequeathed to respondent bank, in trust, all the residue of his estate with the following directions: "From the said trust property my aforesaid trustee shall pay the sum of Two Hundred Fifty dollars per month to my sister Rebecca S. Mayo, said payments to run from the date of my death, and in case she should, by reason of accident, illness, or other unusual circumstances so require, such additional sum or sums as in the judgment of said trustee may be necessary and reasonable under the existing conditions." The trustee was directed, upon the death of the sister, to liquidate the entire estate and to pay over the proceeds to named public and charitable organizations.

The value of Mayo's gross estate was $114,853.37. In the federal estate tax return filed by the executor a deduction of $93,776.70 was claimed under the heading of charitable and public gifts.[1] The Commissioner disallowed the deduction in toto. The Board on redetermination held with the executor.

At the time of decedent's death Rebecca Mayo was in her seventy-ninth year. Her eyesight was greatly impaired. In 1935 an operation had been performed on both her eyes for glaucoma, and in 1936. there had been an operation on her right eye for a cataract. Her activities were and continued to be greatly restricted because of her advanced age and the condition of her sight. She owned in her own right the home in which she lived, valued at $3,500; also stocks and bonds valued at approximately $16,000 and savings bank accounts with deposits totaling in excess of $7,400. Her income from these assets during 1937 was approximately $900. Her living expenses during that year for housekeeper, taxes, food, clothing, and miscellaneous purposes were approximately $1,450.

---

[1] The value given these bequests was apparently their assumed present worth, computed on the basis of mortality tables.

Since decedent's death the monthly allowance of $250 to Rebecca Mayo has at all times been paid out of income from the trust corpus, the latter being composed of stocks, bonds, and a small amount of money. After certain adjustments and the deduction of administration expenses and state and federal income taxes, the net income of the trust corpus for the years 1937 to 1940 was as follows: 1937, $4,814.67; 1938, $5,298.79; 1939, $3,995.77; 1940, $4,872.51. The accounts filed annually by the trustee distinguished income and principal and always indicated the $3,000 annual allowance as a charge against income account. Rebecca Mayo deposited in her savings accounts for accumulation the greater part of these monthly payments.

The taxing statute permits the deduction from gross estate of charitable bequests of the kind made here. The Commissioner argues that where, as here, the bequest is subject to an intervening life estate, the existence of the legal power to invade the corpus, or the mere possibility of invasion, is sufficient to defeat the deduction. The Board, however, was of opinion that on the facts of the case the probability of the trustee's delving into corpus, or even into surplus income, was so inconsiderable as to render the value of the charitable bequests capable of definite ascertainment.

We do not understand that the court in Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667, or United States v. Provident Trust Co., 291 U.S. 272, 54 S. Ct. 389, 78 L.Ed. 793, has announced such hard and fast rule as that for which the Commissioner contends. However, in two recent cases decided by the court of appeals of the first circuit the view he advances appears to have found acceptance.[2] Perhaps these cases are distinguishable on their facts, the will in the Gammons case permitting the use of the principal to satisfy not only the needs but the "desire" of the life tenant, and the Merchants National Bank case involving a discretion to use the principal to supply the "comfort and/or happiness" of the life annuitant. Commissioner v. F. G. Bonfils Trust, 10 Cir., 115 F.2d 788, tends to support the position of the Board.

The case of Ithaca Trust Company v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, is more nearly akin to the present. There the wife was given the whole of the income for life, with authority on the part of the trustee to use from the principal any sum necessary to suitably maintain the wife "in as much comfort as she now enjoys." The court thought the standard was sufficiently fixed and was capable of being stated in definite terms of money, and that "there was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

The case before us exhibits no greater uncertainty. At the decedent's death the life expectancy of the sister was brief.[3] Her mode of living and the restricted sphere of her activities were known. She had independent means, modest in amount, it is true, but substantial for one in her situation. Her living expenses were well within the monthly sum allowed her, even if her own resources be disregarded; and the fixed annuity in turn was so substantially less than the net income of the trust that an excess fund of almost $7,000 accumulated in the four years ending with 1940. Large sums were thus available to meet unusual circumstances such as illness or accident, so that the probability of an invasion of the corpus was remote indeed. Nothing was left to the sister's discretion; and the discretion of the trustee to meet the designated contingencies was confined to the expenditure of what was reasonably necessary.

Naturally, cases arising under this statute present gradations of probability; and we do not wish to be understood as suggesting that charitable bequests in remainder are deductible where there is real likelihood of an undetermined part of the corpus being taken for the benefit of the life tenant. It is the duty of the Commissioner, in administering this statute, to give effect to the beneficent purpose of Congress, and we believe a proper performance of the duty requires that attention be paid to the actualities of each case. The administrative difficulties in the way of doing that are not insurmountable. On the other hand, a blind adherence to arbitrary standards must result in many instances in the needless frustration of the legislative policy.

The judgment of the Board is affirmed.

---

[2] Gammons v. Hassett, 1 Cir., 121 F.2d 229, and Commissioner v. Merchants National Bank of Boston, 1 Cir., 132 F.2d 483.

[3] It is stated in respondent's brief and is not denied that Rebecca Mayo died November 3, 1942.

HANEY, Circuit Judge (dissenting).

The statute authorizes a deduction of the amount of bequests to political divisions and subdivisions for public purposes and of bequests to religious, charitable, scientific and other specified purposes. The applicable regulations provide that if the "trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power". Under the terms of the trust the trustee was directed to pay the sister "in case she should, by reason of accident, illness, or other unusual circumstances so require, such additional sum or sums as in the judgment of said trustee may be necessary and reasonable under the existing conditions."

It is obvious that the trustee is empowered to divert the property to or for the use of the sister, and if the regulation is applied the deduction claimed is not permissible. It is not contended that the regulation is void. Art. 50, Reg. 63 (1922 Ed.) promulgated under the Revenue Act of 1921, Art. 47, Reg. 68 (1924 Ed.) promulgated under the Revenue Act of 1924, Art. 47, Reg. 70 (1926 Ed.) promulgated under the Revenue Act of 1926, Art. 47, Reg. 80 (1934) promulgated under the Revenue Act of 1926 as amended and supplemented by the Revenue Acts of 1928, 1932 and 1934, all contain the identical provision quoted above. Section 403(a) (3) of the Revenue Act of 1921, 42 Stat. 279, § 303(a) (3) of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 68, and § 303 (a) (3) of the Revenue Act of 1926, 26 U. S.C.A. Int.Rev.Acts, page 232, all contain a provision practically identical to the one in question. In addition, §§ 401–404 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev. Acts, page 438, 439; §§ 401–403 of the Revenue Act of 1932; 26 U.S.C.A. Int. Rev.Acts, pages 573–579; §§ 401–406 of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Acts, pages 759–765; and §§ 201–203 of the Revenue Act of 1935, 26 U.S.C.A. Int.Rev.Acts, pages 803–806, all made amendments of the estate tax statutes, but none of them bears on the question here involved.

In view of this long-continued interpretation of that statute by the regulation and the failure of Congress to change it, I think it must be held that the regulation is a part of the statute. Helvering v. J. R. Reynolds Co., 306 U.S. 110, 115, 59 S.Ct. 423, 83 L. Ed. 536; Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52. Under the regulation, the existence of the power to pay the sister in whole or in part the entire principal, is sufficient to defeat the deduction, regardless of the probability of exercise of that power.

The decision should be reversed.