**BLODGET et al. v. DELANEY, Collector.**

No. 4677.

United States Court of Appeals
First Circuit.

Jan. 29, 1953.

Bailey Aldrich, of Boston, Mass. (Choate, Hall & Stewart, Boston, Mass., on brief), for appellants.

Robert B. Ross, Sp. Asst. to Atty. Gen. (Charles S. Lyon, Asst. Atty. Gen., and Ellis N. Slack, Helen Goodner and Melva M. Graney, Sp. Assts. to Atty. Gen., George F. Garrity, U. S. Atty. and Philip T. Jones, Asst. U. S. Atty., both of Boston, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment entered on motion dismissing an action brought for a refund of estate taxes. The question presented is whether on the facts alleged in the complaint it must be ruled as a matter of law that the value of certain charitable gifts in remainder could not be definitely ascertained as of the date of a testator's death, so that in consequence his estate cannot be allowed a deduction therefor under § 812(d) of the Internal Revenue Code, 53 Stat. 1, 124, Title 26 U.S.C. § 812(d).

The plaintiffs are the duly appointed executors and trustees under the will of a citizen and resident of the Commonwealth of Massachusetts who died on April 24, 1946. In Article Seventh of his will the testator left the residue of his estate to his

trustees in trust "to pay over the net income therefrom to my said sister, Sarah L. Guild, if she survives me, quarterly or oftener in the discretion of said Trustees for and during the period of her natural life, and also to pay from the principal any amount in their discretion for her comfort and welfare," with remainder upon her death one quarter to an individual, or if not living to his descendants, and three quarters—about $400,000—in specified proportions to six admittedly charitable organizations. It is alleged in the complaint that the life tenant was born in 1862 and at the time the decedent's will was made, and also at the time of his death, was almost totally blind; that her activities had for many years "followed a definite and rigid routine and her future needs and expenses were capable of reasonably accurate and reliable calculation"; that her anticipated income from the trust under her brother's will and from approximately $500,000 owned by her outright was also capable of reasonably accurate calculation; that her anticipated annual income from all sources as of the date of the decedent's death "exceeded the maximum anticipated amount of any future expenses or requirements for her comfort and welfare"; and, furthermore, that her income from the above sources "exceeded all anticipated expenses which with any reasonable accuracy could be foreseen as needed to support and maintain her on any standard fairly comparable or equal to what she had been accustomed to over a long period of years."

The court below took the view that the standard set by the testator to guide the trustees in the exercise of their discretionary power to invade corpus rendered it impossible to make at the testator's death the "highly reliable appraisal" of the amounts the charities would eventually receive required by the rule of Merchants National Bank v. Commissioner, 1943, 320 U.S. 256, 261, 64 S.Ct. 108, 88 L.Ed. 35, for the allowance of a deduction under § 812(d). It therefore dismissed the plaintiffs' action without passing upon or considering the question of the remoteness or imminence of actual invasion of the corpus by the trustees during the lifetime of the life tenant. See Newton Trust Co. v. Commissioner, 1 Cir., 1947, 160 F.2d 175, 178, 180.

The plaintiffs herein contended below, and they contend here, that the language used by the testator, read with the limitations which Massachusetts law would put upon it, establish for the trustees a "standard * * * fixed in fact and capable of being stated in definite terms of money", so that this case is ruled by Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647. Wherefore they contend that the judgment dismissing their action should be set aside, and the case remanded for determination of the question of the likelihood of invasion, and, if likely, its probable extent.

In the will under consideration in the Ithaca Trust Co. case the testator gave the residue of his estate to his wife for life with authority to use any part of the principal "that may be necessary to suitably maintain her in as much comfort as she now enjoys", with remainder at her death in trust for admitted charities. The above quoted language, the court said, presented the question "whether the provision for the maintenance of the wife made the gifts to charity so uncertain that the deduction of the amount of those gifts from the gross estate * * * cannot be allowed." The court answered this question in the negative, saying: "The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

In the subsequent Merchants National Bank case, supra [320 U.S. 256, 64 S.Ct. 110], the court was confronted with quite different testamentary language. For in the will under consideration in that case the testator not only did not expressly re-

strict the exercise of the trustee's discretion to maintenance of the life beneficiary in the comfort she had previously enjoyed, but the testator also provided for invasion of the corpus by the trustee for her "comfort, support, maintenance, and/or happiness". And in addition the testator said that it was his "wish and will" that the trustee exercise his discretion "with liberality" toward the life beneficiary and "consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust." This language, the court held, made it impossible to fix a sufficiently definite valuation as of the testator's death of the amounts the charities would eventually receive to permit a deduction from the estate tax. It said, with citation of cases which we omit, that for a deduction to be allowed "Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. * * * Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable." Then, pointing out that under the will the extent to which the trustee might invade the principal was not expressly restricted by a fixed standard based on the life beneficiary's way of life, as in the Ithaca Trust case, and emphasizing that the life beneficiary's "happiness" was among the factors to be considered by the trustee, the court summarized its conclusion 320 U.S. on page 263, 64 S.Ct. on page 112, 88 L.Ed. 35 as follows: "Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial."

In the more recent case of Henslee v. Union Planters Bank, 1949, 335 U.S. 595, 69 S.Ct. 290, 291, 93 L.Ed. 259, the court, considering substantially similar testamentary language, reached the same conclusion of nondeductibility, for in the will under consideration therein the testator authorized encroachment upon principal by the trustee "for the pleasure, comfort and welfare" of his mother, the life annuitant, and furthermore provided: "The first object to be accomplished in the administration and management of my estate and this trust is to take care of and provide for my mother in such manner as she may desire and my executors and trustees are fully authorized and likewise directed to manage my estate primarily for this purpose."

The case at bar falls somewhere between the bounds set by the cases cited above. The testator here did not expressly limit his trustees' power to encroach upon principal only to the extent necessary to assure continuance of the life beneficiary's previous way of life as in the Ithaca Trust Co. case. But on the other hand our testator did not admonish his trustees to administer their trust with liberality toward the life beneficiary, or primarily in her interest, nor did he give them power of encroachment for her "happiness" or "pleasure." He simply gave them authority to invade corpus for his sister's "comfort and welfare" without further admonitions or directions. Thus the case is not free from doubt. On the whole, however, we are of the view that it falls within the rule of the Ithaca Trust Co. case rather than within the rule of the Merchants National Bank and Henslee case. We therefore consider the plaintiff-appellants' position well taken.

Clearly we must interpret the testator's language as well as we can in conformity with the law of Massachusetts. Gammons v. Hassett, 1 Cir., 121 F.2d 229, 231, certiorari denied, 1941, 314 U.S. 673, 62 S.Ct. 136, 86 L.Ed. 539; Channing v. Hassett, 1 Cir., 200 F.2d 514. Turning,

therefore, to the law of that Commonwealth, it appears from the authorities cited in Gammons v. Hassett, supra, that the extent of a beneficiary's interest is determined by the intention of the testator ascertained by reading his language with reference to the circumstances surrounding its use. And it appears from Dana v. Dana, 1904, 185 Mass. 156, 70 N.E. 49, and Lumbert v. Fisher, 1923, 245 Mass. 190, 139 N.E. 446, that Massachusetts adheres to the general rule prevailing elsewhere that, absent indications to the contrary, one of the circumstances surrounding the use of a testamentary language to be considered in situations like the present is the beneficiary's station in life and accustomed pattern of living. We recognized Massachusetts' adherence to this rule of construction in Gammons v. Hassett, supra. But there we took the view that by coupling the word "desire" with the word "need," the testator indicated his intention to give the trustee broader power to use the principal than merely to perpetuate the life beneficiary's existing standard of living. We thought he attained that objective by the use of the word "need." So to avoid treating the word "desire" as mere surplusage, we held that the testator must have meant by the word "desire" to give the trustee a power of invasion of the principal "not restricted to a mere use of the corpus for the purpose of satisfying" the life beneficiary's needs as reflected by her prior standard of living. In subsequent cases in this circuit comparable words led us to the same result of nondeductibility, for in Commissioner v. Merchants National Bank, 1 Cir., 1942, 132 F.2d 483 the testator had used the word "happiness"; in Industrial Trust Co. v. Commissioner, 1 Cir., 1945, 151 F.2d 592, 169 A.L.R. 144, certiorari denied, 1946, 327 U.S. 788, 66 S.Ct. 807, 90 L.Ed. 1014, he had used the word "pleasure"; and in Newton Trust Co. v. Commissioner, 1 Cir., 1947, 160 F.2d 175 the testamentary words were "for the use and benefit."

The words "comfort and welfare," with which we are now concerned, however, do not have such sweeping subjective connotations.

■ The Supreme Judicial Court of Massachusetts said in Stocker v. Foster, 1901, 178 Mass. 591, 60 N.E. 407, 408, that although the word "comfort" many include a limited "mental element" in that it covers the "peace of mind which comes from a knowledge" that "physical comfort or support" is available, it nevertheless means primarily the "physical comfort" derived from the application of available funds to "physical comfort or support". See also Homans v. Foster, 1919, 232 Mass. 4, 121 N.E. 417. We therefore conclude that the word "comfort" has at the most only minor subjective connotations.

■ The word "welfare" presents a more difficult problem. It is not only a word whose general content of meaning cannot be defined with precision, but it is also one which so far as we know has not been construed, even in a different context and with reference to other circumstances, by the highest court of the Commonwealth of Massachusetts. No doubt in some contexts and used under some circumstances it covers more elements of the subjective than the word "comfort." Perhaps it does so here. But nevertheless it certainly is not as broad in its subjective sweep as "happiness," "desire," or "use and benefit." Surely it cannot possibly be construed to cover whim or caprice, or even to cover an invasion of principal by the trustee to satisfy the life beneficiary's wish to make a gift. Its precise meaning here eludes capture in a definition. We think there is strong indication in the Massachusetts cases cited above, however, particularly Dana v. Dana, that in view of the life beneficiary's advanced age, physical disability, and settled way of life, the highest court of that Commonwealth would hold that the testator did not intend by using it to authorize his trustees to invade capital to satisfy his sister's subjective yearnings, but intended to authorize them to go no further into capital than necessary to assure perpetuation of his sister's established way of life.

■ Moreover, a trustee, in addition to acting in good faith, is bound in the absence of instructions to the contrary to administer his trust with an eye to the remainder interest as well as to the interest of the life tenant. He cannot slight one interest for the benefit of the other; he

must have scrupulous regard for the interests of both. Here the testator did not instruct his trustees to administer primarily for the life tenant, and if he had meant them to do so in spite of his failure to so instruct them, we think he certainly would have used some word, such as "happiness" or "desire," having far stronger subjective connotations than "welfare."

These considerations lead us to believe that the Supreme Judicial Court of Massachusetts would equate the meaning of "welfare" as used by the testator herein not so much to the meaning of "happiness," "desire" or "use and benefit," as to "maintenance" or "support." That is to say, we think that court on the basis of its prior decisions would hold that "comfort and welfare" as used in the will we are considering meant the physical comfort and state of physical well-being to which the life beneficiary had become accustomed, thus interpolating the "standard * * * fixed in fact and capable of being stated in definite terms of money" set out in words in the will under consideration in the Ithaca Trust Co. case.

█ Many other Courts of Appeals on like reasoning, and also taking into consideration the clear Congressional policy not to benefit the national revenue at the expense of charitable institutions, have in comparable factual situations reached the conclusion of deductibility. First National Bank v. Snead, 5 Cir., 1928, 24 F.2d 186; Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 1929, 36 F.2d 710; Lucas v. Mercantile Trust Co., 8 Cir., 1930, 43 F.2d 39; Commissioner v. Bank of America, 9 Cir., 1943, 133 F.2d 753; Commissioner v. Robertson's Estate, 4 Cir., 1944, 141 F.2d 855; Berry v. Kuhl, 7 Cir., 1949, 174 F.2d 565; Lincoln Rochester Trust Co. v. Commissioner, 2 Cir., 1950, 181 F.2d 424. We find these cases persuasive.

█ We conclude, therefore, that the deduction claimed cannot be disallowed as a matter of law.

The judgment of the District Court is vacated and set aside and the case is remanded to that Court for further consistent proceedings; the appellants recover costs on appeal.

MAGRUDER, Chief Judge (concurring).

This is certainly a close case. I do not dissent from the opinion and judgment of the court, though I am still somewhat troubled by the considerations expressed in my concurring opinion in Gammons v. Hassett, 1 Cir., 1941, 121 F.2d 229, 234, certiorari denied, 1941, 314 U.S. 673, 62 S.Ct. 136, 86 L.Ed. 539.

In Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, the Court looked not at the trust instrument alone, but also at the extrinsic facts, and reached the conclusion that as of the moment of the testator's death there was no substantial likelihood that the corpus would be invaded for the benefit of the life tenant under the limited power of invasion conferred in the will; that the amounts which would ultimately be received by the charities in remainder were affected with "no uncertainty appreciably greater than the general uncertainty that attends human affairs." 279 U.S. at page 154, 49 S.Ct. at page 291, 73 L.Ed. 647. On that factual conclusion, the charitable deduction was allowed. If there is a "clear Congressional policy not to benefit the national revenue at the expense of charitable institutions," it seems that the decided cases have drawn an unfortunate line in denying a charitable deduction wherever the power to invade corpus is conferred in terms embracing "factors which cannot be accounted for accurately by reliable statistical data and techniques" 320 U.S. at page 261, 64 S.Ct. at page 111, 88 L.Ed. 35, even though on the existing facts and circumstances one might conclude to a moral certainty that the power would never be exercised and that the unimpaired remainder would go to the charity upon the death of the life tenant. In Gammons v. Hassett, supra, 121 F.2d at page 234, I pointed out:

"Theoretically the contingency is broader and the chance of its occurrence less capable of estimation than in the Ithaca Trust case, because it depends upon the life tenant's desires as well as her needs. But practically speaking, upon the facts in the present

record as compared with the facts in the Ithaca Trust case, the charitable remaindermen are at least as well assured—perhaps somewhat better assured—of receiving the corpus intact upon the death of the life tenant."

Upon the facts appearing in Gammons v. Hassett it was indeed fantastic to suppose that the corpus would ever be invaded. Yet the charitable deduction was denied. Likewise, the charitable deduction was denied in Merchants National Bank v. Commissioner, 1943, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, the Court disregarding as irrelevant the conclusion of the Board of Tax Appeals that there was reason to believe that the life tenant would never want more than the income from the trust and that "the possibility of corpus being invaded is sufficiently remote to justify the deductions claimed." 45 B.T.A. 270, 274. Instead of having to split hairs between "comfort and welfare" on the one hand and "comfort, support, maintenance, and/or happiness" on the other, it might seem more logical to adopt either of two alternatives: (1) To deny the charitable deduction unless the testator has given an indefeasible remainder to charity upon the death of the life tenant, or (2) to allow the deduction in full wherever it is properly found as a fact upon consideration of all the circumstances that the chance of invasion of the corpus is negligible, however broadly or narrowly the power to invade corpus may be expressed in the will.