HUMES ET AL. *v.* UNITED STATES.

CERTIORARI TO THE COURT OF CLAIMS.

No. 376. Argued March 9, 1928.—Decided April 9, 1928.

Under § 403 (a) (3), of the Revenue Act of 1918, which provides that bequests to charitable corporations may be deducted in determining the net estate subject to estate tax, a contingent bequest the value of which cannot be determined from any known data but depends on mere speculation, is not deductible. P. 493.

63 Ct. Cls. 613, affirmed.

CERTIORARI, 275 U. S. 515, to a judgment of the Court of Claims, rejecting a claim for refund of part of an estate tax.

*Mr. A. L. Humes,* with whom *Mr. Milward W. Martin* was on the brief, for petitioners.

The will bequeathed approximately twelve million dollars to charity, the bequests to be defeated if a fifteen-year-old unmarried girl should live to be forty or should die leaving issue. It is obvious that the fact that the bequests were subject to be defeated by the subsequent event reduced their present value, but did not prevent them from being "bequests" or from having present value.

It is impossible to foretell definitely what value any future interest, even a life estate, will turn out to have, but the present value of such an interest is legally determinable if the probabilities involved are all shown by the standard mortality and probability tables.

The charities received a vested interest in a contingent estate, and such an interest is a present property right having present value. Chaplin on Suspension of the Power of Alienation (2d Ed.), p. 87; 2 Washburn, Real Property (6th Ed.), p. 527, § 1557; *Clarke* v. *Fay,* 205 Mass. 228; *Heath* v. *Widgeon,* (1907) 2 Ch. D. 270; *Stringer* v. *Barker,* 110 N. Y. App. Div. 37; *In re Twaddell,* 110 Fed. 145; *In re Hoadley,* 101 Fed. 233; *Nat'l Park Bank* v. *Billings,* 144 N. Y. App. Div. 536.

The present value of a property right that is dependent upon some future event may be determined by the use of standard mortality and experience tables, and by the calculations and testimony of actuaries. *Dugan* v. *Miles,* 292 Fed. 131; *United States* v. *Fidelity Trust Co.,* 222 U. S. 158; *Simpson* v. *United States,* 252 U. S. 547.

The present value of a bequest that is subject to be defeated by some subsequent event, may well involve identically the same probabilities as the present value of a bequest that is absolutely vested and hence the attempt to distinguish between them is unjustifiable. *Cushman* v. *Cushman,* 116 N. Y. App. Div. 763; and *Kahn* v. *Bowers,* 9 F. (2d) 1018, distinguished.

It has been adjudicated in other cases that the value of bequests identical with the charitable bequests in the present case is, for legal purposes, determinable from the standard experience tables. *Heath* v. *Widgeon*, (1907) 2 Ch. D. 270; *Clarke* v. *Fay*, 205 Mass. 288; *Ex parte Thistlewood*, 19 Vesey, Jr., 236. See *Shover* v. *Myrick*, 4 Ind. App. 7.

In the following cases, to prove the present value of some future interest, the opinion and calculations of an expert actuary were admitted in evidence and accepted as reliable. *Thayer* v. *Denver, etc. Co.*, 21 New Mex. 330; *Fort Worth, etc. Ry. Co.* v. *Spear*, 107 S. W. 613; *St. Louis, etc. Ry. Co.* v. *Hall*, 106 S. W. 194; *Galveston, etc. Ry. Co.* v. *Cooper*, 2 Tex. Civ. App. 42; *Clark County Cement Co.* v. *Wright*, 16 Ind. App. 630.

In the following cases, it was held that the value of such interests could be shown from standard mortality tables, and the values thus shown were accepted as reliable: *Simpson* v. *United States*, 252 U. S. 547; *United States* v. *Fidelity Trust Co.*, 222 U. S. 158; *Pierce* v. *Tennessee, etc. Co.*, 173 U. S. 1; *Vicksburg Ry. Co.* v. *Putnam*, 118 U. S. 545. See also *Western Assurance Co.* v. *Mohlman*, 83 Fed. 811, certiorari denied, 168 U. S. 710.

The deduction must be taken now, for if the executors should wait until the contingency happens, and then, if the charities receive the property, claim a refund, the claim for refund would be barred by the statute of limitations. The purpose of Congress in allowing the deduction of charitable bequests, was to encourage such bequests. That purpose shows that the statute should be broadly applied. *Edwards* v. *Slocum*, 264 U. S. 61.

*Solicitor General Mitchell*, with whom *Mr. T. H. Lewis*, Special Attorney, Bureau of Internal Revenue, was on the brief, for the United States.

Whether or not contingent bequests to charity may be deductible under some circumstances, the value of the

charitable bequests here are not ascertainable, and not presently deductible. *Kahn* v. *Bowers,* 9 F. (2d) 1018; 5 Am. Fed. Tax Rep. p. 5888; *Herron* v. *Heiner,* 1928 Prentice-Hall Tax Service, Vol. 1, p. 164; *First Nat'l Bank* v. *Snead, id.* 426; *Ithaca Trust Co.* v. *United States,* 64 Ct. Cls. 686; *Dugan* v. *Miles,* 292 Fed. 131.

The use of mortality tables to determine values of life estates has been approved in tax cases. *United States* v. *Fidelity Trust Co.,* 222 U. S. 158; *Simpson* v. *United States,* 252 U. S. 547.

There has been no provision in the Revenue Acts expressly to the effect that readjustment of estate taxes may be made at any time in the distant future on which, through the happening of future events, uncertainties of the kind here involved are removed. The statutes of limitation provide that claims for refund must be filed within a limited time. It is the practice of the Treasury Department, however, if a claim for refund is filed within the prescribed time and is denied on the conditions as they stand, to allow the taxpayer to have the claim reopened and reconsidered at any time in the future on the production of new evidence or developments; and so in this case, although the application for refund has necessarily been denied because the value of the bequest to charity is not now ascertainable, the way may be open in the future, if the developments justify it, to apply for a reconsideration of the claim and then obtain a readjustment. T. D. 3240, Vol. 23, Treasury Decisions (Internal Revenue) p. 830.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This action was brought in the Court of Claims by the executors of Dellora R. Gates to recover $120,508.50, a part of the estate tax alleged to have been illegally exacted under the Revenue Act of 1918, c. 18, § 403, 40 Stat. 1057,

1098.  The basis of the claim is that a sum of $482,034, which was disallowed in ascertaining the net estate taxable, should have been deducted from the gross amount of $11,783,072.30 disposed of by Article Fifty-first of the will. The sum disallowed represents the alleged present value of certain contingent bequests to charities made by that article.  The question for decision is whether the alleged present value of such contingent bequests is deductible under § 403, par. (a), sub-par. 3, of the Revenue Act.  The Court of Claims held that the Commissioner of Internal Revenue was right in refusing to allow the deduction. 63 Ct. Cl. 613.  This Court granted a writ of certiorari. 275 U. S. 515.

The governing provision of the Act is: " That for the purpose of the tax the value of the net estate shall be determined—(a) In the case of a resident, by deducting from the value of the gross estate—  . . .  (3) The amount of all bequests  . . .  to or for the use of any corporation organized and operated exclusively for  . . . charitable  . . .  purposes."  Allowance of the deduction was denied pursuant to Treasury Department Regulations 37, Article 56, which declared: " Conditional Bequests.—Where the bequest, legacy, devise, or gift is dependent upon the performance of some act, or the happening of some event, in order to become effective it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed.  Where by the terms of the bequest, devise or gift, it is subject to be defeated by a subsequent act or event, no deduction will be allowed."

Article Fifty-first of the will gives one-half of the residuary estate to the testatrix's trustees in trust for her niece, Dellora F. Angell, portions of the principal to be paid to her upon her attaining the ages of thirty and thirty-five years, the balance to be paid to her upon her attaining the age of forty, the income to be paid to her in the meantime.

In the event that the niece should die without issue before attaining the age of forty, the amount of the principal not paid to her was given to charities.  The remaining half of the residue was to be held in trust for the testatrix's brother during his life, the principal to be disposed of on his death in like manner as the half first mentioned.  The testatrix died in 1918.  Dellora F. Angell was then living, was fifteen years old and was unmarried.  The contention of the executors is that the bequests gave the charities a present property right in the estate; that the present value of a property right which is dependent upon some future event may be determined by the use of standard mortality and experience tables and by the calculations and testimony of actuaries; that the value so determined of the contingency that the whole or a part of the gift would go to charities is at least $482,034; that the deduction must be taken now, for if the executors should wait until the contingency happens and then, if the charities receive the property, claim a refund, the claim for refund would be barred by the Statute of Limitations; and that, because it was the purpose of Congress to encourage bequests for charitable purposes, the act should be construed so as to allow such a deduction.

The Court of Claims did not find that the present value of the contingent bequests to the charities can be determined by the calculations of actuaries based upon experience tables.  No basis is laid in the record for supplementing the findings in this respect.  But the executors urge that we may take judicial notice that such tables exist; and that, by the use of them, actuaries are able to determine that in 1918 the possibility that the residuary gift of $11,783,072.30, or a part thereof, would ultimately go to the charities was worth at least $482,034; or in other words, 4.0909 per cent of the amount of that residue. The figure, $482,034, we are told, is reached, through the actuarial art, by some combination and adjustment of the

standard experience table of mortality long in use (see *Simpson* v. *United States,* 252 U. S. 547, 550) with two other tables which are relatively little known and which do not appear to have ever been used in America in legal proceedings. One of these is supposed to show what the probability is that a woman dying at a given age will die unmarried; the other to show what the probability is that if she marries, she will die childless.

If all the facts stated had been embodied in findings, no legal basis would be laid for the deduction claimed. The volume and character of the experience upon which the conclusions drawn from these two tables are based, differ from the volume and character of the experience embodied in standard mortality tables, almost as widely as possibility from certainty. Both of these tables, are based on data contained in volumes of Lodge's Peerage. The first table, which may be found in the Transactions of the Faculty of Actuaries in Scotland, Vol. 1, pp. 278–279, and is called Lees' Female Peerage Tables, was constructed by M. Mackensie Lees. It deals with 4,440 lives, of whom 2,010 died during the period of observation. The second of the tables, which may be found in an article entitled "On the Probability that a Marriage entered into by a Man of any Age, will be Fruitful," in the Journal of the Institute of Actuaries of Great Britain, Vol. 27, pp. 212–213, was constructed by Dr. Thomas Bond Sprague. It deals with the experience of 1,522 male members of the Scotch peerage and purports to show the probability that a marriage will be childless both as respects men married as peer or heir apparent and men who did not marry as peer or heir apparent. In order to apply the latter table to females certain assumptions and adjustments are necessarily made. It was on such data that the petitioners sought to set a money value on the probability that this Texas girl of fifteen will not marry, or if she does, will die without issue before the

age of thirty, or thirty-five, or forty. Obviously, the calculation that the contingent interest of the charities was equal to 4.0909 per cent of the residue, was mere speculation bearing the delusive appearance of accuracy.

One may guess, or gamble on, or even insure against, any future event. The Solicitor General tells us that Lloyds of London will insure against having twins. But the fundamental question in the case at bar, is not whether this contingent interest can be insured against or its value guessed at, but what construction shall be given to a statute. Did Congress in providing for the determination of the net estate taxable, intend that a deduction should be made for a contingency, the actual value of which cannot be determined from any known data? Neither taxpayer, nor revenue officer—even if equipped with all the aid which the actuarial art can supply—could do more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character. Compare *Edwards* v. *Slocum,* 264 U. S. 61, 63.

*Affirmed.*