## GAMMONS et al. v. HASSETT, Collector of Internal Revenue.

### No. 298.

District Court, D. Massachusetts.

Jan. 31, 1941.

. Harold Williams and Luther Hill, both of Boston, Mass., for plaintiffs.

C. Keefe Hurley, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Leon F. Cooper, Sp. Assts. to the Atty. Gen., on the brief), for defendants.

SWEENEY, District Judge.

This is an action to recover estate taxes alleged to have been illegally assessed and collected.

The question is whether, in determining the net estate of the decedent, the plaintiffs were entitled to deduct from the gross estate, the amount of a bequest to two charities.

The Commissioner of Internal Revenue denied a claim for refund of the money sought to be recovered here, on the ground that the amount of the gift to the charities was not ascertainable as of the date of decedent's death because of a right given a life tenant to invade the corpus of the trust. All conditions precedent to the right to bring this action have been satisfied.

### Findings of Fact.

A stipulation of facts has been filed by the parties which I adopt as my findings of fact. It is also agreed between the parties that the charities named were corporations "organized and operated exclusively for * * * charitable * * * purposes". In addition thereto certain other evidence was offered. From these sources I find that Bryan R. Houghton died June 30, 1936, at the age of ninety-two, leaving a widow, Mary F. Houghton, aged ninety-three. The couple had no children. She was bedridden, and had been unable to handle her affairs for about two years before his death. During this period he gave her much assistance in that respect. After his death it was necessary to appoint a conservator for her. This was done on July 8, 1936. She is now living, is mentally alert, but is still confined to her bed.

His will, which was dated October 24, 1934, was reaffirmed by a codicil dated May 29, 1936, about a month before his death. At this time he did not expect that she would live long. When he executed this codicil, Mrs. Houghton also executed the third codicil to her will. Under her codicil the residue of her estate would have gone to her husband if she had predeceased him. However, if he was not living at her death the residue of her estate was to go to the trustees under the will of her husband to be added to the trust that he set up for the benefit of the two charities referred to herein.

At the time of the decedent's death his gross estate had a fair valuation of approximately $275,000. On the same date Mrs. Houghton had property which had a fair valuation of approximately $190,000.

Prior to his death, the Houghtons had lived on a simple scale. The house in which they had resided for more than forty years was worth about $7,000. Their

530

wants and mode of living were very conservative, and their combined income, which varied between $15,000 and $25,000 per year, was greatly in excess of their needs.

It might well be anticipated, considering her age, her habits, and her environment, that, in the absence of unusual circumstances, Mrs. Houghton would have no need to resort to the principal of the trust fund set up in Mr. Houghton's will in the sense of supplying herself with income for her actual necessities. But the question is not only one of her need to resort to this trust fund, for the will says she might invade the corpus of her husband's trust to the extent that she "may at any time and from time to time need or desire".

The plaintiffs argue that the words "need" and "desire" as used in Mr. Houghton's will are synonymous, and that the trustees of his will could not pay over to her from the principal of the trust fund anything beyond money for her actual needs.

■ Her conservator, who might in her behalf be called upon to make demand for an additional amount as a "desire", is likewise one of the trustees under the will, and his statements that such a demand would be refused are reassuring that so far as he is concerned there would be no invasion of the principal, except for Mrs. Houghton's needs. But, in the last analysis, her right to any or all of the corpus based on a "desire" is a matter which only a probate court could decide in the absence of complete agreement between the trustees, the conservator, and Mrs. Houghton. All of this may seem rather remote from the question involved, but it has a distinct bearing on the plaintiffs' right to deduct from the gross estate what they claim is an ascertainable amount bequeathed to charities. Although statutory provisions allowing exemptions from taxation are construed liberally in favor of the exemptions, the taxpayer must show with reasonable certainty the amount of the claimed deduction. Pennsylvania Co. for Insurances, etc., v. Brown, D.C., 6 F. Supp. 582; New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; and Deputy, Adm'r'x, v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416.

In Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647,

a definite standard was set up to gauge and limit the amount of the possible invasion of the trust by the life tenant. It was reasonably ascertainable what amount the life tenant could withdraw from the trust fund by the very terms of the trust instrument, and hence the amount of the deduction given to charities was capable of ascertainment as of the date of death. To bring this case within the doctrine of the Ithaca case, supra, it would be necesssary for me to find and rule that under the terms of Mr. Houghton's will, Mrs. Houghton was limited to the income from the residuary trust plus so much of the principal as she might have actual need for, in the sense of providing her with such necessities as might be normal to her established style of living. There is nothing in the language of the will that warrants such a finding. Neither is there convincing evidence that such was the testator's intent.

■ The ordinary meaning of the word "desire" is request or wish. In order to limit the meaning of that word to the extent urged by the petitioners I would have to read into the will something that does not appear within its four corners. It is reasonable to assume that Mr. Houghton did not expect that she would have any reason to invade the corpus of his trust, and it may be further assumed, since she had shown a decided interest in the two charities involved, that she would refrain from destroying his charitable gift by her mere whim. But, if he considered withholding from her the power to destroy a charitable gift, he did not use language adequate to accomplish that purpose. If he did not intend to limit her power to destroy the gift, then the language that he used appears to include such a power. Since the amount that may go to charity was not capable of ascertainment on the day of his death as it is not capable of ascertainment even at this date, there could be no deduction from the gross estate of the value of the charitable gift. See Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667.

## Conclusions of Law.

I therefore conclude that the value of the gift to the charities was not known or ascertainable on the date of the decedent's death, and was therefore not deductible. The Commissioner's ruling was correct, and the plaintiffs are not entitled to re-

cover. All of the plaintiffs' requests for findings of fact have been given in substance with the exception of request No. 7 which is denied. Judgment may be entered for the defendant.