## LAMM LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10145.

Circuit Court of Appeals, Ninth Circuit.

Feb. 8, 1943.

Charles E. McCulloch and Thomas B. Stoel, both of Portland, Or. (Hart, Spencer, McCulloch & Rockwood, of Portland, Or., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Newton K. Fox, and Mills Kitchin, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

Petitioner taxpayer, an Oregon corporation, seeks review of an order of the United States Board of Tax Appeals upholding a determination of a deficiency in taxpayer's income tax for the tax year 1936. The Commissioner's determination was based upon a disallowance of a deduction made in taxpayer's return for depletion of timber cut in that year from a tract of approximately 300,000,000 feet, principally pine, in Klamath and Lake Counties, Oregon, which timber petitioner had agreed to purchase on December 31, 1932, from the Long-Bell Lumber Company, hereafter called Long-Bell.

Taxpayer claims it had paid $200,000 as a consideration for the contract of 1932 for the purchase of the timber. It has apportioned this amount evenly over the 300,000,000 total stumpage of the tract, the deduction being for the number of thousand feet of timber cut in 1936 at the rate of 66⅔¢ per thousand. The Board disallowed the claimed deduction on the ground that the $200,000 had not been paid as a consideration for the timber purchased and cut. Taxpayer has the burden of proof that its deduction clearly falls within some deduction provision of the taxing act. White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348.

Taxpayer agrees that unless it has shown by the evidence that the $200,000 is the exact consideration for entry into the 1932 contract, the Board must be sustained. Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 72 L.Ed. 667; Bank of America N. T. & S. Ass'n v. Commissioner, 9 Cir., 126 F.2d 48, 51. It admits that it has presented no facts to show that the consideration was for any other amount.

Taxpayer in 1929 entered into a contract to purchase from Long-Bell a tract of land with approximately 600,000,000 feet of timber on it, which included the smaller amount of the timber of the 1932 contract,—the latter being for the timber alone. The total amount to be paid under the 1929 contract was $3,600,000, $3,400,000 being payable in 25 stated installments, the last being payable December 31, 1939.

The timber was to be released for cutting by the taxpayer at a stumpage rate of $6.00 per thousand for the pine and $2 per thousand for the intermingled fir and other less valuable trees. Prior payments of the installments were to be applicable to procure the cutting releases.

In addition to the installments of a total of $3,400,000 to be paid from time to time prior to December 31, 1939, the 1929 contract acknowledges the receipt of $200,000, making up the total of $3,600,000, the agreed purchase price.[1] This $200,000 was not applicable to any but the last of tim-

---

[1] The clause provided that the taxpayer agreed: "First: To purchase the lands described in 'Exhibit A' and to pay the Seller therefor (subject to the provisions contained in Article III hereof) the sum of Three Million Six Hundred Thousand Dollars ($3,600,000.00), as follows: Two Hundred Thousand Dollars ($200,000.00) cash, which has already been paid and the receipt of which is hereby acknowledged, and the balance of Three Million Four Hundred Thousand Dollars ($3,400,000.00), together with interest thereon from July 1, 1929, compounded annually, until paid, at the rate of Five per cent (5%) per annum, in the following twenty-five (25) installments: * * *."

ber cutting releases, the provision being that it "shall always remain intact and inapplicable to payment for cutting privileges until used to make the last payment on the contract price." On default by the taxpayer for 180 days after notice by Long-Bell the latter had the right to terminate the contract and to retain as liquidated damages all sums, that is, all installments of consideration paid and the $200,000. No such notice was given by Long-Bell.

The depression made impossible the continuance of the 1929 contract, and negotiations were begun for a new contract, culminating in that of December 31, 1932, for one-half the quantity of timber without the land thereunder at $3 per thousand, instead of $6 for the pine, and $2 for the other trees.[2]

A provision in the 1932 contract with reference to the 1929 contract is that the earlier contract "shall become and be null and void and of not further force or effect, except that the Seller shall retain as its own, without accountability to the Purchaser therefor, the sum of Two Hundred Thousand Dollars ($200,000) heretofore paid by the Purchaser to the Seller pursuant to the provisions of Article II of said agreement; and the Purchaser shall be under no further or any obligation to the Seller, and/or its assigns, or at all, on account of or growing out of said prior agreement."

The Board held that this was action by Long-Bell in avoidance of the 1929 contract under the terms of which the $200,000 was to be retained by Long-Bell, and that the $200,000 was not a consideration for the 1932 contract; that is to say, if consideration at all, it is consideration for the termination of the earlier contract. Taxpayer claims this was error and that the exact sum of $200,000 is the consideration for the succeeding contract.

At the argument the taxpayer stated its position to be that, in the absence of a termination notice by Long-Bell, the 1929 contract was a valid and existing agreement up to the making of the 1932 contract, and that its avoidance then was the consideration for the new contract. Assuming the taxpayer's contention is correct, what the taxpayer lost was not the $200,000 as a part consideration for the

sale of the land and timber, but the equitable title to the land described in the contract of 1929, and the timber thereon (Grider v. Turnbow, 1939, 162 Or. 622, 641, 94 P.2d 285), subject to the payments therein provided. The taxpayer offered no evidence as to the value of this equitable title, and the conduct of the parties in executing a new contract for a much smaller consideration would indicate that it had no value.

It is also contended by the taxpayer that the $200,000 is a mere deposit belonging to the taxpayer, because the 1929 contract provided that it "shall always remain intact and inapplicable to payment for cutting privileges until used to make the last payment on the contract price." We do not so regard it. This clause of the earlier contract must be construed with its termination clause provision that the taxpayer should be without any right "to the return, reclamation or compensation for money paid or received on account of the proposed purchase or sale of said lands as above described, as fully and perfectly as if this contract and such payments had never been made," and with the agreement for cancellation of the 1929 contract, cited above, that the 1929 contract shall become null and void "except that the Seller [Long-Bell] shall retain as its own, without accountability to the Purchaser [taxpayer] therefor." So far as the exception of the $200,000 is concerned, the 1929 contract is not void, and the amount was retained under that contract.

Taxpayer might have contended with some force that the retention of the $200,000 being in a clause in the 1932 contract, though providing for the cancellation of the 1929 contract, was a consideration in part for the termination of the old contract with its $6 cutting rate for pine, and also in part for the making of the new contract with its $3 cutting rate. However, no proof was offered to sustain taxpayer's burden as to how much of the $200,000 was apportionable to the new contract.

It is our opinion that the Board must be sustained in its holding that no part of the $200,000 is to be deemed as the consideration for the 1932 contract. The termination provision in the 1932 contract is entirely different from that in a previous

[2] The 1932 contract had a provision for payment to Long-Bell of a share of the taxpayer's profits, if any, out of its timber operations as an additional payment for the timber. There was no such provision in the 1929 contract.

memorandum agreement which provided that: "As part of the consideration of the new [1932] contract, Long-Bell shall retain as its own the $200,000.00 heretofore paid by Lamm under the existing contract, and, on account of which, no timber has been cut." The failure to incorporate this provision in the 1932 contract finally determining the relation of the parties, warrants the inference that they finally concluded to treat the $200,000 as not consideration for the latter instrument.

The order of the Board of Tax Appeals is affirmed.