Estate of Mary A. Hume, Deceased, Wells Fargo Bank & Union Trust Company and Priscilla E. Shand, Executors v. Commissioner.
Estate of Hume v. Commissioner
Docket No. 111770.
United States Tax Court
1943 Tax Ct. Memo LEXIS 296; 2 T.C.M. (CCH) 113; T.C.M. (RIA) 43329; May 20, 1943
*296 Lawrence C. Baker, Esq., for the petitioners. Thomas M. Mather, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding involves an estate tax deficiency of $16,260.15. The sole question for our determination is whether a bequest by decedent to trustees for charitable purposes of the remainder of her residuary estate, after a life estate to her niece, was a charitable bequest the value of which is deductible from gross income under section 812(d) of the Internal Revenue Code. Several additional issues were settled by stipulation as follows: (1) Respondent concedes that petitioners are entitled to the deduction of a bequest of $10,000 to the Girl's Friendly Society Lodge; (2) Petitioners concede that the respondent correctly disallowed a deduction of $5,000 as a bequest to the Women's Overseas Service League; and (3) Petitioners concede that there should be included in decedent's gross estate $1,269.25 which was discovered in a savings account belonging to decedent after determination of the deficiency herein. [The Facts] The decedent, Mary A. Hume, died testate in San Francisco, California, on December 20, 1940. In her will, *297 after making a number of specific bequests, she left the residue of her estate in trust to Wells Fargo Bank & Union Trust Co. and her niece, Priscilla E. Shand, to pay the income to her niece for life and thereafter to certain named charities, or other like charities, within the discretion of the trustees. The trustees were authorized to use such part of the principal of the trust fund as they might deem reasonable to assist the niece in the event of sickness, accident, want or other emergency. The material provisions of the will read as follows: * * * to pay the net income derived therefrom to LEO BRUCK, CAPTAIN DUNCAN MATHESON and RUDOLPH SCHRADER (hereinafter designated as "Board of Trustees of Robert Deniston and Mary A. Hume Endowment") and to their successors in office, to be by them expended for the relief of sick, destitute and unfortunate persons, and for such charitable purposes as they in the exercise of their sole discretion shall deem best. It is my particular desire that the income of this fund shall be expended for the following uses and purposes: (a) Through the San Francisco Chapter of American War Mothers for the purpose of giving relief and comfort to World War *298 Veterans and their families; (b) For the relief of destitute children under the age of ten (10) years who come into the hands of the Police Department of the City and County of San Francisco because of crime committed by their parents or guardians, or whose parents have died or have deserted them, or because of such other facts as may place said children in need of immediate assistance; (c) For the relief and assistance of persons discharged from any Penal Institution maintained by the State of California, or the Government of the United States in California, in order that they may maintain themselves until such time as they are enabled to find work or employment; The purposes above enumerated are by no means intended to be exclusive, and the instructions are only intended as a guide to the trustees insofar as it may be practicable from time to time to carry out such purposes, but the trustees shall be vested with full power and discretion to use the income of said trust fund for like or other charitable purposes, and they shall not be subject to an accounting in respect to said income if the same is used for benevolent or worthy purposes. All the members of the Board need not *299 unite in exercising the powers given to said Board, and any act of a majority of the members shall be effectual for every purpose. The Board of Trustees consisting of Robert Deniston and Mary A. Hume Endowment shall be a self perpetuating body and upon the death, resignation or inability to act of any member of the Board, the remaining members shall select his successor, who shall be vested with like power and authority as his predecessor in office. A codicil to the will, executed on September 25, 1934, and probated as a part thereof, reads in part as follows: SIXTH I give, bequeath and devise all the rest, residue and remainder of my property and essate, of whatsoever kind and character and wheresoever situate, intending hereby to modify the provisions of Article VIII of said will as herein provided, in trust to my niece, Priscilla E. Shand, and Wells Fargo Bank & Union Trust Co., or if my said niece predecease me or subsequently die or be unable or unwilling to act, in trust to said Wells Fargo Bank & Union Trust Co., for the following uses and purposes: (a) While my said niece be acting as trustee the powers conferred upon said Wells Fargo Bank & Union Trust Co. as trustee *300 under Article II of said will shall be exercised by said niece and said Wells Fargo Bank & Union Trust Co. jointly, and no bond shall be required of her as such trustee. (b) The entire net income, revenue and profit therefrom shall be paid monthly unto my said niece, Priscilla E. Shand, so long as she may live. (c) In the event my said niece shall be in need of funds at any time on account of any sickness, accident, want or other emergency my trustees may use and apply such part of the corpus and principal of the trust estate as they may deem reasonable to assist her on account thereof. (d) On the death of said niece, or upon my death if she predecease me, the net income derived from the trust estate shall be paid to Leo Bruck, Captain Duncan Matheson and Rudolph Schrader, or their successors, all for the purposes and upon the terms and provisions provided in said Article VIII of said will. The appraised value of decedent's estate at the date of her death was $289,458.57. The residuary estate, which consisted principally of stocks and bonds, was appraised at $130,000. It was distributed to the testamentary trustees on August 18, 1941. Thereafter, the trustees paid to the life *301 beneficiary, Priscilla Shand, $300 per month out of the income of the trust until her death on June 22, 1942, after a long illness. The income of the trust fund together with income from her own securities was more than ample for her needs. The annual net income of the trust amounted to $4,000. The undistributable income was held by the trustees for the life beneficiary, according to her direction. At the date of decedent's death Priscilla Shand was 54 years of age. She was employed as a saleslady in the Jade Room of S. & G. Gump Co., San Francisco, from 1915 to 1918, receiving in the later years of her employment a salary of $175 per month. At some time in 1918 she left her employment with S. & G. Gump Co. to become a companion to decedent at a salary of $45 a week. She was so employed at the time of decedent's death. At the time of her death Priscilla Shand had an estate of her own valued at approximately $35,000. It consisted of cash and securities of approximately $30,800, and household furnishings, wearing apparel, and other assets valued at approximately $5,000. In his deficiency notice the respondent disallowed the following amounts claimed as deductions from decedents' gross *302 estate in her estate tax return: 1. Girl's Friendly Society Lodge
$10,001.00
2. Seaman's Church Institute
5,000.00
3. Women's Overseas Service League
5,000.00
4. Masonic Home, Decoto, California
11.00
5. Board of Trustees of Robt. Deniston
and Mary A. Hume Endowment
84,371.67
The parties have reached an agreement and have stipulated, as stated above, with respect to all of these items except item five, listed as the bequest to "Board of Trustees of Robt. Deniston and Mary A. Hume Endowment." This is the accepted value of the remainder of her residuary estate, after the life estate of her niece Priscilla Shand. The respondent determined in his deficiency notice that the value of the remainder estate is not deductible as a charitable bequest under section 812 (d) of the Internal Revenue Code because of the power given to the trustees to divert the corpus of the trust to the private use of Priscilla Shand during her lifetime, and that consequently the amount which will ultimately go to charitable uses is not definitely determinable. At the hearing of this proceeding counsel for the respondent advanced as a further reason for the disallowance of the deduction the fact *303 that the trustees were given the power to use the income of the trust fund, after termination of the life estate, "for like or other charitable purposes" than those specified in the will. Both of those contentions are argued by the respondent in his brief. [Opinion] Section 812 of the Internal Revenue Code provides in material part as follows: SEC. 812. NET ESTATE. For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate - * * * * *
(d) Transfers for Public, Charitable, and Religious Uses. - The amount of all bequests, legacies, devices, or transfers, * * * to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, excludsively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. * * *
Petitioners contend, relying upon the principle of Ithaca Trust Co. v. United States, 279 U.S. 151, *304 and other like cases, that the possibility of invasion of the trust corpus during the life and for the benefit of Priscilla Shand was so remote as not to endanger the charitable bequest of the remainder interest, and that the bequest is therefore deductible. In the Ithaca Trust Co. case the testamentary trustees were authorized to withdraw for the use of the life beneficiary, the testator's widow, as much of the corpus of the trust as necessary "to suitably maintain her in as much comfort as she now enjoys." Holding that the gift to charity was not so uncertain as to prevent its deduction from the testator's estate, the court said: * * * The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs. In Commissioner v. Bank of America Nat. Trust & Savings Assn., Executor, (Will of Elisha Cobb Mayo), 133 Fed. (2d) 753, *305 the Circuit Court of Appeals for the Ninth Circuit held, affirming a Memorandum Opinion of this Court, that there was a deductible gift to charity of the remainder of a testamentary trust fund, after a life estate in the testator's sister, where the trustees were directed to pay to the sister from the trust property $250 a month "and in case she should, by reason of accident, illness, or other unusual circumstances so require, such additional sum or sums as in the judgment of said trustee may be necessary and reasonable under the existing conditions." In its opinion the court said: * * * At the decedent's death the life expectancy of the sister was brief. Her mode of living and the restricted sphere of her activities were known. She had independent mears, modest in amount, it is true, but substantial for one in her situation. Her living expenses were well within the monthly sum allowed her, even if her own resources be disregarded; and the fixed annuity in turn was so substantially less than the net income of the trust that an excess fund of almost $7,000 accumulated in the four years ending with 1940. Large sums were thus available to meet unusual circumstances such as illness or *306 accident, so that the probability of an invasion of the corpus was remote indeed. Nothing was left to the sister's discretion; and the discretion of the trustee to meet the designated contingencies was confined to the expenditure of what was reasonably necessary. The facts in that case and those in the instant case bear a striking similarity. There the bequest to charity was of the remainder of the residuary trust estate after a life estate in the testator's sister; here it was of a remainder of the residuary trust estate after a life estate in the testatrix's niece. There the corpus might be invaded in case of "accident, illness, or other unusual circumstances"; here in the case of "sickness, accident, want or other emergency." There the amount which might be withdrawn from the corpus was "such additional sum or sums as in the judgment of said trustee may be necessary and reasonable"; here "such part of the corpus and principal of the trust estate as they [trustees] may deem reasonable to assist her on account thereof." There the life beneficiary at the date of testator's death was 79 years of age; here 54 years of age. There the life beneficiary had an estate of her own of approximately *307 $27,000; here an estate of approximately $35,000. In each case the income required by the life beneficiary for living expenses was less than the amount of income distributed to her by the trustees. The court observed in its opinion (Commissioner v. Bank of America Nat. Trust & Savings Assn., Executor) that Gammons v. Hassett, 121 Fed. (2d) 229; certiorari denied, 314 U.S. 673, and Commissioner v. Merchants National Bank of Boston, Executor (Estate of Ozro Miller Field), 132 Fed. (2d) 483; reversing 45 B.T.A. 270, both decided by the Circuit Court of Appeals for the First Circuit, while apparently supporting the Commissioner's contentions were perhaps distinguishable on their facts; since in the former case the corpus of the trust might be used to satisfy the "'desire' of the life tenant" and in the latter case for the "comfort and/or happiness" of the life tenant. In Commissioner v. Merchants National Bank of Boston, Executor, supra, the court's decision turned largely upon the uncertainty of the amount that the trustees might be *308 required to withdraw from the trust principal for the "happiness" of the widow. In Gamons v. Hassett, supra, the court said that: * * * It was certain [in Ithaca Trust Co. v. United States, supra] that the charities would take the property over and above what was required to maintain the life tenant's customary standard of living. That amount of property and its value could be determined definitely. In the present case we have no such certainty. The power to invade the principal is not restricted to the life tenant's needs; the widow may invade it as she desires. We know of no standard fixed in fact by which we could measure either the extent of the life tenant's desires or the likelihood of an exercise of those desires, so that we could place a definite value on the charitable bequests. * * * While it is true that in both of those cases the court used language that might be construed to mean that the mere possibility of an invasion of the trust principal, however remote, would prevent the deduction of the charitable bequest of the remainder interest, we do not think that it was the court's intention to formulate such a rule for general application. *309 In United States v. Provident Trust Co., 291 U.S. 272, the Supreme Court said that in determining the deductibility of a charitable bequest of this character: The sole question to be considered is, What is the value of the interest to be saved from the tax? That is a practical question, not concluded by the presumption invoked, but to be determined by ascertaining in terms of money what the property constituting that interest would bring in the market, subject to such uncertainty as ordinarily attaches to such an inquiry. See Ithaca Trust Co. v. United States, supra. * * * In Ithaca Trust Co. v. United States, supra, the question was said to be: * * * whether the provision for the maintenance of the wife made the gifts to charity so uncertain that the deduction of the amount of those gifts from the gross estate under section 403 (a) (3) supra, in order to ascertain the estate tax, cannot be allowed. Humes v. United States, 276 U.S. 487, 494, 48 S. Ct. 347, 72 L. Ed. 667, * * *. Where the possibility of the invasion of *310 the trust principal out of which the charitable bequest is made is so remote as not seriously to affect the ascertainment of the value of the bequest and where, on the known facts, the value can be ascertained with reasonable accuracy, the test for the deduction as laid down by the Supreme Court has been met. We think that the facts in the instant case bring the bequest to charity within that rule. The life beneficiary was 54 years of age at the time of decedent's death and had an estate of her own probably sufficient for her needs for the remainder of her lifetime. Her living habits were frugal, as is shown by the fact that she had accumulated an estate of her own, with the help of her banker, and that she did not make use of all of the income of the trust to which she was entitled. The likelihood that there would ever be any invasion of the trust corpus was so remote as not seriously to detract from the value of the charitable bequest. Other cases in which the deduction of charitable bequests has been allowed because of the remoteness of the possibility, though actually present, of an invasion of the trust corpus out of which the bequests were made are Commissioner v. F. G. Bonfils *311 Trust, 115 (2d) 788; affirming 40 B.T.A. 1085; Lucas v. Mercantile Trust Co., 43 Fed. (2d) 39; affirming 13 B.T.A. 85; First Nat. Bank of Birmingham, Ala. v. Snead, 24 Fed. (2d) 186; and Hartford-Connecticut Trust Co. v. Eaton, 36 Fed. (2d) 710. While the life beneficiary here was also a trustee she was not the sole trustee and no contention can be made that she had any sole discretionary power to use any part of the principal of the trust for her own benefit. It is to be noted especially that the principal of the trust fund could be invaded only if the life beneficiary should be "in need of funds at any time on account of any sickness, accident, want or other emergency." Thus, as was said in Ithaca Trust Co., supra, " There was no uncertainty [as to the gifts to charity] appreciably greater than the general uncertainty that attends human affairs." We think that the charitable bequest here was sufficiently certain and capable of accurate valuation as to come within the deductions authorized by section *312 812(d) above. Respondent argues that the deduction must be disallowed for the further reason that the trustees of the remainder estate, after termination of the estate of the life beneficiary, were authorized under the provision of decedent's will to use the trust income for noncharitable purposes. The will provides for payment of the trust income for certain specifically enumerated charities and says further: * * * but the trustees shall be vested with full power and discretion to use the income of said trust fund for like or other charitable purposes, and they shall not be subject to an accounting in respect to said income if the same is used for benevolent or worthy purposes. The use of the words "benevolent of worthy purposes," respondent says, "discloses an intention on the part of the trustor that the income may be used for purposes that are not charitable or otherwise comprehended by Section 812(d)." That construction of decedent's will is a distortion of the plain intention of the testatrix. The power vested in the trustees was to use the income, at their discretion, "for like [that is, like those enumerated] or other charitable purposes." ( Italics supplied.) The further *313 provision that the trustees would not be held accountable if the income should be used for "benevolent or worthy purposes" is of no special significance and certainly is no argument against the charitable nature of the bequest or the charitable intention of the testatrix. Decision will be entered under Rule 50.