**COMMERCE TRUST COMPANY, Executor of the Estate of Eleanora S. Goodman, deceased, and Trustee of Eleanora S. Goodman, Testamentary Trust, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 10442.**

United States District Court
W. D. Missouri, W. D.

July 19, 1958.

Findings of Fact and Conclusions of Law
Sept. 19, 1958.

**644**

John G. Killiger, Jr., Maurice J. O'Sullivan, Philip J. Erbacher, Kansas City, Mo., for plaintiff.

W. F. Kolbe, Attorney, Tax Division, Dept. of Justice, Washington, D. C., Horace Warren Kimbrell, Asst. U. S. Atty., Kansas City, Mo., for defendant.

RIDGE, District Judge.

In consequence of the pre-trial order herein, the issue for determination is whether Item V, Section 1, of the last will and testament of Eleanora S. Goodman, deceased, which authorizes an invasion of the corpus of the trust estate here considered, is so worded as to make the contingent bequest to charity unascertainable in value at the date of the deceased's death; thereby subjecting testator's estate to the deficiency tax, refund of which is here claimed. It is stipulated and agreed that the Court has jurisdiction of this claim and that all conditions precedent to plaintiff's right to maintain this action is conceded.

From the pleadings, exhibits, admissions and stipulations of the parties appearing of record, the following facts are made manifest.

Eleanora S. Goodman died testate in Kansas City, Missouri, on February 27, 1950. She left surviving her daughter, Marie Louise Goodman, who was then approximately 65 years of age. Item V, Section 1 of the last will and testament of deceased provided as follows:

"My trustee shall pay over and deliver the net income from the trust estate, or the sum of Four Thousand Dollars per annum whichever is the greater amount, to my daughter, Marie Louise Goodman, in quarterly installments so long as she shall live, and in addition to said income or payments, my Trustee may at any time, if deemed necessary or advisable for the proper support, maintenance and care of my said daughter, use, pay to, apply or expend for her such part or all of the principal and corpus of my trust estate as may in its discretion be determined to be adequate or necessary therefor, after full discussion and consideration of the facts with my daughter. In the event of her illness, injury or under any circumstances of emergency affecting her welfare or health, my trustee or executor is authorized and directed to pay all reasonable expenses necessarily incurred on account thereof, or arising therefrom, in addition to said quarterly sums."

April 23, 1951, a federal estate tax return was filed for deceased's estate. In computing the estate tax due thereon, the

plaintiff claimed as a charitable deduction the sum of $122,196.18. The sum so claimed represented plaintiff's computation according to Treasury Department Regulation 105, Section 81.10, of the present value of the contingent bequest made by deceased to Children's Mercy Hospital, which the Government concedes is to a charitable organization. The tax as computed by plaintiff was duly paid on April 23, 1951. Thereafter, the Government disallowed the above charitable deduction and made a deficiency assessment against deceased's estate in the amount of $29,803.97. That deficiency assessment, together with interest in the sum of $5,963.12, making a total of $35,767.09, was paid under protest by plaintiff on January 4, 1955.

Plaintiff now asserts that the amount of allowable deduction for charitable purposes from the gross of deceased's estate should be the sum of $119,075.85, instead of $122,196.18 as originally claimed. Its complaint herein stands amended accordingly. In addition to that deduction from the gross estate of deceased for charitable purposes, plaintiff also claims a right to deduct attorney's fees and administration expense in connection with the prosecution of this case, regardless of the ultimate outcome; and also take credit for Missouri Inheritance and Estate Taxes as yet unpaid but which will become due and payable to the State of Missouri after the termination of this action.

"Subject to objection as to competency and materiality made by defendant, (which is now overruled by the Court) it is stipulated and agreed that Marie Louise Goodman was sixty-five (65) years of age at the time of the death of Eleanora S. Goodman, deceased; that under the last will and testament of George H. Sombart, deceased, Marie Louise Goodman was entitled to receive the sum of $7,500.00 a year during her lifetime, and that Marie Louise Goodman had a personal estate in the sum of $80,020.81 at the time of the death of Eleanora S. Goodman, deceased; that the income from the personal estate of Marie Louise Goodman amounted to $2,400.00 a year prior to and at the time of the death of Eleanora S. Goodman, deceased, and that Marie Louise Goodman expended the sum of $5,000.00 per year to maintain herself in her mode of living prior to and at the time of the death of Eleanora S. Goodman. Marie Louise Goodman was never married and was in good health at the time of the death of Eleanora S. Goodman." Pre-Trial Order.

As we view it, the fundamental question in the case at bar revolves around the provision contained in Item V, Section 1 of the testator's will, reading as follows:

"* * * In the event of her illness, injury, or under any circumstances of emergency affecting her welfare or health, my trustee or executor is authorized and directed to pay all reasonable expenses necessarily incurred on account thereof, or arising therefrom, in addition to said quarterly sums."

■ Under applicable law, regulations, and the weight of controlling authority, we think it is transparent that the provisions in Item V of testator's will, supra, which permit an invasion of the corpus of the trust here considered, whereby the trustee is to pay to testator's daughter "the net income from the trust estate, or the sum of $4,000.00 annually, whichever is the greater amount"; and the provision that the trustee can, in addition to making such income payments, at any time if "deemed necessary or advisable for the proper support, maintenance and care of (her) said daughter, use, pay to, apply or expend for her such part or all the principal and corpus of (this) trust estate as may in its discretion be determined to be adequate or necessary therefor, after full discussion and consideration of the facts with (her) daughter," standards are thereby established that are "fixed in fact and capable of being stated in definite terms of

money" within the ambit of Ithaca Trust Co. v. United States, 1928, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647; Merchants National Bank of Boston v. Commissioner of Internal Revenue, 1943, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35; and Henslee v. Union Planters Bank, 1948, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259; so that the value, as of the date of this testator's death, of the contingent remainder payable to charity could be "adequately measurable" for tax purposes.

As to the provision made by testator for her daughter under the last-above quote, the question as to whether the value of the contingent charitable bequest can be "presently ascertainable" is very close. An interpretation thereof does not appear to be readily premised in any factual situation considered in many seemingly conflicting Court of Appeal and District Court authorities cited by the parties; nor to fall within the concept that this testator thereby only authorized an invasion of the corpus of this trust to insure that her daughter would continue to enjoy an accustomed standard of living, as considered in Ithaca Trust Co. v. United States, supra. It appears that by the last-above-quoted provision of her will the testator thereby intended and meant to, and did, provide more than a fixed income and "support, maintenance and care" for her daughter in the custom the daughter enjoyed at the date of testator's death. Seemingly, testator thereby undertook to direct her trustee to shield her daughter "under any circumstances of *emergency* affecting her *welfare* or *health*" and authorized the use of all or any part of the corpus of the contingent bequest made to charity for that purpose. When such provision of the instant will is considered in relation to the other two provisions made for her daughter, it is clear, from the verbiage used, that the testator spells out a possible invasion and use of the corpus of this trust for something more than any status her daughter may have occupied at the time of the testator's death.

I am unable to give the above testamentary provision the restrictive legal meaning that can be made in respect to the other two provisions made by testator for her daughter, as above ruled. This, notwithstanding that it is only "reasonable expense necessarily incurred on account thereof or arising therefrom" that may be disbursed by the trustee under the latter provision. First, because the possible use by the trustee of the corpus of this trust for the "welfare or health" of testator's daughter is to be "in addition to (the) quarterly sum" payable to the daughter, and in all logic and reason that appears to spell out a possible use of such corpus to an unascertainable extent. (The net income of the Eleanora S. Goodman testamentary trust is only "approximately an average of $5,000.00 per year." Ex. 1, Plf. Comp.) Secondly, the term "welfare or health" as used in that above provision of testator's will can only mean something more than use of corpus to pay "quarterly income" and for the "proper support, maintenance and care" of testator's daughter. There are no words of limitation used by testator, whereby "welfare or health" are made referable to a standard of living previously enjoyed by testator's daughter, or which indicate that it was the intention of the testator that the trustee be bound by any such concept. The only limitation placed thereon is that the corpus of this estate is to be used for that purpose only in an "emergency". The meaning of that latter term, as used in this will, is itself doubtful. However, the interpretation to be given to the instant will is to be made in conformity with the law of Missouri. Blodget v. Delaney, 1 Cir., 201 F.2d 589, 592. I think that what was said by the Supreme Court of Missouri, in Lyter v. Vestal, 355 Mo. 457, 196 S.W.2d 769, 2 A.L.R.2d 1375, is apposite to the interpretation to be given to the word "emergency" as used in the instant will. There the Court said, loc. cit. 773:

"* * * It appears to us an 'emergency,' which would call for the trustees' best informed judgment on the question of the necessity, the propriety and the amount of an encroachment upon the corpus of the

trust estate, would be a situation where the financial resources of the (daughter) including the (daughter's) income from the trust estate were, in the best informed judgment of the trustees in considering an urgent need of the (daughter), in such a state of insufficiency or unavailability that the encroachment would be immediately necessary for the (daughter's) * * * general welfare (or health). The word 'emergency' is not construed as a temporary unavailability of resources to meet a need, which need would, in the judgment of the trustees, in reasonable probability be satisfied, in course, by the (daughter's) resources including her income from the trust estate. The word 'emergency' is thus construed to the word's full import of meaning, that is, to the full import of the necessity, urgency and immediacy .implicit in the meaning of the word." (Parentheses supplied.)

That being the interpretation that should be given to the term "emergency" in the above provision of testator's will, and it being transparent therefrom that "welfare and health" as also used therein cannot and are not referable to accustomed "support, maintenance and care" we can only conclude that the charitable bequest made by testator in the instant will cannot be accurately calculable as to present value, at the date of death of testator, and the factual situation in the case at bar falls squarely within the following controlling authorities. (cf.) Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667; Merchants National Bank of Boston v. Commissioner of Internal Revenue, supra; Henslee v. Union Planters Bank, supra; and Commissioner of Internal Revenue v. Estate of Sternberger, etc., 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246. As said in the Merchants Bank case, supra, 320 U.S. at page 261, 64 S.Ct. at page 111:

"For a deduction under § 303(a) (3) (812(b) 1939 Code) to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the. relatively accurate valuations on which the market place might be willing to act are not sufficient. Cf. Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 348, 72 L.Ed. 667. Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable. Cf. Bank of America Nat. Trust & Sav. Ass'n v. Commissioner, 9 Cir., 126 F.2d 48."

A specific annual income and "support, maintenance and care" may be adequately measurable under Internal Revenue Regulation 105, Section 81.44 to permit a deduction of the present value of a bequest to charity on that score. However, I.R.R. 81.46 provides expressly that no deduction is allowable for a conditional bequest to charity "unless the possibility that charity will not take is so remote as to be negligible." Subsection (b) of said regulation reads as follows:

"If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power." 26 CFR

In Commissioner of Internal Revenue v. Sternberger's Estate, supra, it is said,

348 U.S. loc. cit. 199, 75 S.Ct. loc. cit. 235:

"This Court finds no statutory authority for the deduction from a gross estate of any percentage of a conditional bequest to charity where there is no assurance that charity will receive the bequest or some determinable part of it. Where the amount of a bequest to charity has not been determinable, the deduction properly has been denied."

[5, 6]  In all reason it appears that at the date of death of this testator the probability that the corpus of this trust would be invaded in consequence of any one of the three contingencies above considered is and was very remote. Considering the age of Marie Louise Goodman; that she was in good health; that her personal estate, income therefrom, and a life income from the Sombart estate, were then more than adequate to maintain her in the standard of living to which she was accustomed is the only logical conclusion to be reached. Presumably, the testator had knowledge of all such facts at the time of the execution of this will and just prior to her death. Yet, the fact remains that she died testate, providing that "in the event of her (daughter's) illness, injury or under any circumstances of emergency affecting her welfare or health" the executor was authorized and directed "to pay all reasonable expense necessarily incurred on account thereof, or arising therefrom, in addition to said quarterly payments." Expense incurred for "illness" and "injury" to such life beneficiary are disjunctively directed to be paid from expense incurred for any "emergency affecting her welfare or health." All such are directed to be payable by the trustee without discretion on its part, except that discretion which it might invoke in considering when an "emergency" exists as to "welfare or health," as above ruled. Internal Revenue Regulation 105, Section 81.44, supra, demands two factors be established before a contingent charitable bequest is deductible. Such regulations have the force of law. Commissioner of Internal Revenue v. Sternberg-

er's Estate, supra. The burden of proof is upon the plaintiff to establish both such factors before it can claim a right to refund of any portion of the deficiency tax assessed against this testator's estate. Merchants National Bank of Boston v. Commissioner of Internal Revenue, supra.

In light of the pre-trial order, we shall give plaintiff an opportunity to demonstrate that even though an invasion of the corpus of this trust, as a consequence of the life interest made contingent to the charitable bequest here considered, may be remote, there is in fact a standard by which a deduction of taxes to some extent under the above regulations and I.R.R. 105, Section 81.10, may be made.

Plaintiff will make such showing before the Court on Monday, August 25, 1958, at 10:00 o'clock, A.M.

### Findings of Fact and Conclusions of Law

Plaintiff has been given an opportunity to demonstrate that, notwithstanding the ruling of this Court that the provisions of the last will and testament of Eleanora S. Goodman, deceased, permit an invasion of corpus of the trust estate, as considered in this Court's memorandum dated July 19, 1958, there is a readily ascertainable and reliable standard by which the extent of any such invasion can be reasonably determined to provide a percentage deduction from decedent's gross estate for Estate Tax purposes because of a contingent charitable bequest.

From the testimony adduced before the Court on that subject, the only logical conclusion to be reached is that if any invasion of corpus in the instant matter was made pursuant to plaintiff's theory of claimed estate tax deduction, $4,000 of the amount which plaintiff credits to annual income of Marie Louise Goodman at the date of death of her decedent would also have come from income or corpus of the instant trust estate. That sum, and the provision for payment thereof as contained in decedent's will, considered in relation to an added permissible invasion of corpus for the "health or welfare"

of Marie Louise Goodman, would seemingly spell out an invasion of corpus of the instant trust to an indeterminable amount in excess of the $4,100 which plaintiff uses as a factor to calculate the amount of the contingent charitable deduction it now claims. As a consequence thereof, the Court can only conclude that the evidence adduced by the plaintiff is insufficient to establish facts from which a highly reliable appraisal can be made as to the amount Mercy Hospital would have received under the last will and testament at the time of the death of Eleanora S. Goodman, deceased.

Furthermore, Marie Louise Goodman was in good health at the time of decedent's death. Plaintiff's theory of action proposes a claim for deduction from decedent's gross estate based upon an hypothesis that did not in fact exist, or one that was reasonably predictable, at the date of death of Eleanora S. Goodman, deceased. We do not believe, under the case law cited in our previous memorandum, that plaintiff may, under the circumstance here shown in evidence, undertake to make the terms of the instant will establish a standard, certain in fact, when no such standard actually existed or could be reasonably ascertained from the terms of decedent's will. We can find no authority under § 812(b), 1939 I.R.C., 26 U.S.C.A. § 812(b), or Treasury Regulations for allowance of a deduction from gross estate for charitable purposes, calculated on an assumption that there is an hypothesis, not based on some existing fact, that would establish a maximum amount which should be considered in reduction of estate tax as plaintiff here theorizes. Merchants Bank v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, and Henslee v. Union Planters Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259, with clarity hold otherwise.

Plaintiff has not sustained the burden of proof to establish that under the last will and testament of Eleanora S. Goodman, deceased, there is a "standard * * * fixed in fact and capable of being stated in definite terms of money" (Ithaca Trust Co. v. United States, 277 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647) that will permit a deduction from the estate tax, as assessed by the Commissioner in this case, because of a charitable bequest. The results that may be attained under the instant will are not the same as those considered in the Ithaca Trust case, supra. A contingent bequest, the value of which cannot be determined from any known data but depends on mere speculation, is not deductible from the gross estate of a decedent. Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667, and cases cited supra.

However, in recomputing the amount of estate tax due in the case at bar, reasonable attorneys' fees incurred or paid by the Trustee herein for the prosecution of this action (not to exceed the sum of $5,000), and Missouri Inheritance Taxes actually paid, may be deducted from the gross estate of decedent.

## Findings of Fact

(1) The plaintiff is and was at all times relevant to this action a Missouri corporation with trust and fiduciary powers.

(2) Eleanora S. Goodman died, testate, on February 27, 1950, and the plaintiff was the duly appointed Executor of her Estate and Trustee of the Eleanora S. Goodman Testamentary Trust.

(3) The relevant portions of the Eleanora S. Goodman Testamentary Trust, created by the last will and testament of said Eleanora S. Goodman, read as follows:

"My Trustee shall pay over and deliver the net income from the trust estate, or, the sum of Four Thousand Dollars per annum, whichever is the greater amount, to my daughter, Marie Louise Goodman, in quarterly installments so long as she shall live, and in addition to said income or payments, my Trustee may at any time, if deemed necessary or advisable for the proper support, maintenance and care of my said daughter, use, pay to, apply or expend for her such part or all the principal and corpus of my trust estate as may in its

discretion be determined to be adequate or necessary therefor, after full discussion and consideration of the facts with my daughter. In the event of her illness, injury or under any circumstances of emergency affecting her welfare or health, my Trustee or Executor is authorized and directed to pay all reasonable expenses necessarily incurred on account of, or arising therefrom, in addition to said quarterly sums."

The will then provided in substance that upon the death of said Marie Louise Goodman the trust would terminate and that practically all of the corpus still remaining would be distributed to the Children's Mercy Hospital, a charitable organization.

(4) The total gross estate of said Eleanora Goodman was, at the time of her death, valued for Federal Estate Tax purposes, at $192,051.74. On April 23, 1951, the plaintiff filed a timely Federal Estate Tax Return for the Estate of said Eleanora S. Goodman, and in computing the estate tax due claimed as a deduction, by way of charitable bequests, the sum of $122,196.18.

(5) This claimed charitable deduction was based upon the plaintiff's computed value of the remainder interest to the Children's Mercy Hospital arising from the above-quoted portions of the decedent's will. The defendant, through its agents, disallowed this deduction, and on account of said disallowance assessed a deficiency in estate tax of $29,803.97, which amount, together with interest thereon, of $5,963.12, was paid by the plaintiff on January 4, 1955.

(6) On June 7, 1955, the plaintiff filed a claim for refund, Form 843, with the District Director of Internal Revenue in Kansas City, Missouri, and therein claimed that said charitable deduction in the amount of $122,196.18 should have been allowed and further claimed that the estate should be permitted deductions for attorneys' fees incurred in the prosecution of this action and for Inheritance Taxes to be paid to the State of Missouri.

No part of said claim for refund was allowed.

(7) The instant action was commenced on June 13, 1956, and in its complaint the plaintiff makes the same assertions as in its claim for refund, except that the deductible value of the remainder bequest to Children's Mercy Hospital is now claimed to be $119,075.86, rather than $122,196.18.

(8) At the time of the decedent's death, Marie Louise Goodman was 65 years of age, having a life expectancy of 15½ years; and had a personal income of $9,900 independent of the trust provisions here involved.

(9) Said Marie Louise Goodman was in good health at the time of the decedent's death.

(10) Prior to and at the time of the decedent's death said Marie Louise Goodman expended the approximate sum of $5,000 per annum to maintain herself.

(11) If said Marie Louise Goodman had become totally disabled either at or subsequent to the date of the decedent's death, it would have required a maximum of $18,000 a year in hospital, medical and surgical expenses to maintain her.

(12) The plaintiff's attorneys have offered proof to the Court that their fees in the instant matter will be approximately $5,000, and the defendant concedes that, considering the time and effort expended by them, such fees would be reasonable. However, neither proof of payment nor any agreement by the plaintiff to pay these fees has yet been offered.

(13) The possibility that the income from the trust in question would ever fall below $4,000 so that the payment of quarterly sums would impair the corpus is so slight as to be negligible.

(14) The life beneficiary was not permanently disabled at the time of decedent's death, and it was neither predictable nor likely that she would ever become so.

Conclusions of Law

(1) The Court has jurisdiction of this action by virtue of 28 U.S.C. § 1346(a)(1).

(2) The possibility that the corpus of this trust would have to be invaded in order to pay the required quarterly payments totaling $4,000 per annum is so unlikely and remote as to be negligible and therefore has no practical effect upon whether or not the remainder to charity was capable of accurate valuation upon the decedent's death.

(3) The provisions of this trust, authorizing the Trustee to make those payments to the life beneficiary which it deems necessary or advisable for her support, maintenance and care, mean that the Trustee may expend such sums as are required to maintain Marie Louise Goodman in the standard of living which she enjoyed at the time of the death of her decedent. Since the life beneficiary's then standard of living is a known and determined fact, the sums that such maintenance will require are determinable and sufficiently fixed so as to provide an accurately calculable standard by which any likely future invasions of corpus can be adequately measured. Furthermore, in the instant case the life beneficiary had an assured income of $13,900 a year and only $5,000 a year was required for her proper maintenance, and, therefore, the Court finds that the properly measured amount of corpus impairment for her maintenance is zero. Such provision, therefore, does not make the value of the remainder to charity indefinite. See Ithaca Trust Co. v. United States, 277 U.S. 151, 49 S.Ct. 291.

(4) Since the Trustee of this trust is authorized to pay out of corpus, in the event of illness or injury of the life beneficiary, or under any circumstances of emergency affecting her welfare or health, all necessary expense incurred on account thereof, or arising therefrom, the amount, if any, by which the corpus would be reduced on account of that provision of decedent's will cannot be accurately measurable so as to determine the actual value of the charitable remainder as of the date of the decedent's death. Any such computation must be predicated upon known or reliably predictable facts as of the date of the decedent's death. In the instant case it was neither reliably predictable nor even likely that the life beneficiary would become totally disabled and therefore a measurement of corpus impairment and the resulting valuation of the remainder to charity based on that hypothesis cannot be considered in determining this charitable remainder's value for Federal Estate Tax purposes. See Merchants National Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35; Henslee v. Union Planters Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259. Therefore, the Court concludes that since the amount by which the corpus of this trust might be impaired because of the above-referred-to provision of decedent's will was not accurately calculable as of the date of the decedent's death, the value of the charitable remainder cannot be adequately ascertained and a deduction on account thereof may not be had.

(5) The plaintiff is entitled to deduct from the gross estate of decedent all inheritance taxes paid to the State of Missouri, as well as the amount of attorneys' fees paid or incurred by plaintiff for the bringing and prosecution of this action, not to exceed, however, the sum of $5,000.

(6) The record in this case shall be held open for 30 days, within which time the plaintiff may offer proof as to the amount of payment made to the State of Missouri for inheritance taxes, and that attorneys' fees, incurred on account of prosecuting the claim herein involved, have either been paid or that the plaintiff has entered into an agreement for their payment.

(7) Within 60 days, the parties shall agree to the form and amount of a judgment order to be herein entered in accordance with these findings of fact and conclusions of law.